[No. 4372.]

Bogart et al. v. The Amanda Consolidated Gold Mining Company.

1. **Appellate Practice—Mandate—Directing Judgment—Law of Case.**

Where a cause was appealed to the supreme court and reversed, and the trial court was directed to enter a certain decree, and did enter a decree in accordance with the mandate

of the supreme court, the parties cannot go behind the mandate to question such decree.

2.  **Mineral · Lands—Conveyances—Surface and Mineral—Separate Estates.**

In mineral lands the surface and the mineral may be severed and conveyed as separate estates; but, until there has been a severance, ownership of the surface carries with it ownership of the mineral beneath the surface.

3.  **Same—Contracts—Conveyances.**

A contract to convey "the surface ground" included within a conflict between two mining claims, saving and excepting from such conveyance a certain named vein, is a contract to convey all the mineral beneath the surface of the conflict except the one vein named in the exception, and in an action to enforce specific performance of such contract, a decree requiring the grantor to convey the land in conflict, including all the minerals except the vein named in the contract, will be sustained.

*Error to the District Court of El Paso County.*

Mr. John P. Brockway, for plaintiff in error.

Mr. J. M. Hawkins and Mr. S. H. Kinsley, for defendant in error.

Chief Justice Campbell delivered the opinion of the court.

This is an action to enforce specific performance of a contract for the conveyance of real estate. The contract in question was made by the owners of the Amanda and Bogart lode claims, two conflicting mining locations, with a view to avoid litigation and to enable the junior locator to obtain a patent and convey the conflicting territory in accordance with the terms of their settlement. That part of the agreement material here reads: "The first parties agree within ten days after the issuance of the patent for the said Bogart lode, to convey to said second parties * * * the surface ground included within the conflict * * saving, excluding and excepting from said deed so to be made the Bogart vein, lode,

3

ledge or deposit wherever the same may be found to cross or pass through the conflicting surface."

The cause was first before this court upon an appeal of the present defendant in error, and the judgment originally pronounced by the trial court, which was in favor of the present plaintiffs in error, was reversed and the cause remanded with instructions to the district court to vacate its judgment theretofore rendered, "and to enter a decree requiring the defendant mining company * * to convey by good and proper deed of conveyance *the land in conflict between the two claims* described in the agreement set out in the complaint, and as therein provided."

Upon filing the remittitur in the district court upon the application of plaintiff (who is defendant in error here), the district court entered a decree requiring the defendants (the plaintiffs in error) to convey the land in conflict between the Bogart and the Amanda lode mining claims, including all the minerals except the Bogart vein. Of this decree the defendants complain, and are now here by a writ of error.

The only question presented for determination is, as stated by counsel for plaintiffs in error: Was the decree entered by the court below in compliance with the order and mandate of the supreme court, and such a decree as can, under any circumstances, be supported by the pleadings in the case? The specific objection to the action of the trial court in rendering the decree complained of is that the defendants thereby were required to convey to the plaintiff all of the territory in conflict between the two conflicting locations, including all the minerals below the surface and within the exterior boundaries of the territory in conflict, save and except the Bogart vein, whereas it was only the *surface ground* with-

out any mineral rights which defendants covenanted to convey.

A sufficient reply to this contention is that in our mandate the trial court was directed to enter a decree requiring defendants to convey the *land* in conflict.   It must be conceded that the language of the mandate was sufficient authority for the decree rendered, but it is argued that the contract set out in the complaint called for a conveyance only of the *surface ground,* and that such expression "surface ground" has a distinctive meaning in the mining regions, and cannot be interpreted as including any minerals below the surface.

If plaintiffs in error can now go behind our mandate, which we think they are not permitted to do, let us see if there is any foundation for their contention.   Unquestionably, in mineral land there may be a severance of estates, the mineral constituting a separate corporeal hereditament capable of distinct conveyance from the surface or the soil, each estate being in separate owners.   But it is also true that until there has been a severance, ownership of the surface carries with it ownership of the minerals beneath the surface.  As expressed in 1 Lindley on Mines, at section 2, under the common law, minerals were the property of the owner of the land, the property in the surface carrying with it the ownership of everything beneath and above it; and this *prima facie* ownership continued until rebutted by showing that ownership of the mines and minerals had become in fact several and distinct from the ownership of the soil or surface.

See, also, Barringer & Adams on the Law of Mines, p. 4.

In 2 Washburn on Real Property (6th ed.) section 1318, the learned author says: "Whoever owns the surface is presumed to own, and would originally

actually own, whatever minerals there might be be-
neath such surface, until he shall have granted away
the one or the other, and thus separated their owner-
ship.''

What was the intention of the parties at the time
they made this agreement? If there is any ambigu-
ity in the language employed, it must be resolved in
favor of the grantee and against the grantors. The
object of the court should be to place itself, as nearly
as possible, in the position of the parties at the time,
and from the terms of the contract and the surround-
ing circumstances arrive at their meaning. We do
not think there is any difficulty in ascertaining this
intention from the language of the written agree-
ment. While there may be two distinct ownerships
in mineral land, one of the surface or the soil, and
the other of the minerals underneath, we are satisfied
that by this agreement the applicant for the patent
for the Bogart claim intended to convey to the own-
ers of the conflicting location not merely the surface
ground in conflict, as contradistinguished from the
mineral beneath, but with this surface ground all
underlying minerals except the Bogart vein. This
is entirely clear from the excepting or reservation
clause of the contract whereby the owners of the
Bogart reserved to themselves, and excepted from
the grant, the Bogart vein. The agreement contem-
plated that the owners of the Bogart location might
proceed, without objection from the senior locators,
to obtain a patent for the ground in conflict. When
they got their patent they owned the entire estate
and by this agreement reserved to themselves, and
excepted from the operation of the grant, only the
Bogart vein. If it had been their intention to re-
serve all the mineral beneath the conflicting surface
ground, they naturally would have made such pro-

vision in the excepting clause. Not having done so, but having excepted only the Bogart or cross-vein, it is plain that the intention of both parties was that the owners of the Amanda lode were to receive a conveyance of everything within the conflicting territory except the specific vein reserved.

Under the decisions of this court which were in force at the time this agreement was made, the law was that the owner of a junior location conflicting with a senior was entitled to the cross-lode throughout the territory in conflict. The contracting parties must be presumed to have known this, and to have made their contract to conform to it. The complaint shows that the Amanda was the older location. Its rights, as then understood, to all the territory in conflict were paramount to the rights of the Bogart location except as to the cross-lode. The agreement, as recited in the complaint, was made for the purpose of settling the differences between the parties amicably and without litigation, and for the purpose of giving to the owners of each claim their respective rights. These "respective" rights, under the law, as then enforced by the courts, as just indicated, were that the owners of the Bogart claim were, as to the territory then in dispute, entitled only to the Bogart vein which crossed the Amanda location. The owners of the Amanda were entitled not only to the surface ground of the conflicting territory, but to all veins and lodes within the surface boundaries thereof, save and except the cross-lode of the Bogart.

The decree which we commanded, and which, in compliance therewith, the district court entered, is, without doubt, in accordance with the manifest intention of the parties. It is, therefore, affirmed.

*Affirmed.*