THE CATLIN COAL COMPANY

*v.*

HENRY LLOYD.

*Opinion filed October 24, 1898—Rehearing denied December 15, 1898.*

| 176 | 275 |
| 180 | 399 |
| 176 | 275 |
| 194 | 2 26 |

| 176 | 275 |
| e203 | 2632 |
| e206 | 1537 |

| 176 | 275 |
| 114a | 2514 |

1. REAL PROPERTY—*coal and minerals in place are "land."* Coal and minerals in place, where the title thereto has been severed from the title to the surface, constitute "land," and the owner thereof has all the rights of an owner of an interest in land, and he may invoke the Statute of Limitations to defend his title.

2. LIMITATIONS—*possession of surface is not possession of minerals if title is severed.* Possession of the surface of land does not carry with it possession of the coal and minerals in place thereunder if the title has been severed.

3. SAME—*section 7 may be availed of to defend title to minerals in place.* Coal and minerals in place, where the title is severed from that of the surface, may be regarded as "vacant and unoccupied land," within the meaning of section 7 of the Limitation act, (Rev. Stat. 1874, p. 674,) and seven successive years' payment, by the holder of color of title, of taxes thereon, assessed separately from the surface, will bar ejectment.

4. EVIDENCE—*entry in collector's book competent to remove uncertainty in tax receipt.* An entry in a tax collector's book showing who paid the taxes on a certain tract of land in a certain year is admissible to explain a discrepancy in the tax receipt which misstates the number of the township in describing the land.

5. REHEARING—*when a rehearing will not be granted to permit a re-argument on the sufficiency of the evidence.* Where a judgment in ejectment has been reversed and the cause remanded for a re-trial a rehearing will not be granted to permit a re-argument upon the question whether the proof in the record establishes a question of fact not controverted in the original briefs.

6. SAME—*effect where misapprehension is occasioned by the petitioner's fault.* Where judgment has been reversed and the cause remanded a rehearing will not be allowed because of an alleged misapprehension of the evidence upon a certain point which has resulted from the court's assumption that the position taken upon such point by the appellee in his original brief and argument was correct.

APPEAL from the Circuit Court of Vermilion county; the Hon. F. BOOKWALTER, Judge, presiding.

W. J. CALHOUN, and H. M. STEELY, for appellant:

Under the general issue in ejectment the Statute of Limitations may be set up as a defense, or any other matter that tends to defeat plaintiff's action. *Stubblefield* v. *Borders,* 92 Ill. 279; *Sheldon* v. *Van Vleck,* 106 id. 45.

In ejectment plaintiff must recover on the strength of his own title, and not upon the defects in or weakness of the title of defendant. *Marshall* v. *Barr,* 35 Ill. 106; *Masterson* v. *Cheek,* 23 id. 72; *Hayue* v. *Porter,* 45 id. 318; *Kirby* v. *Railroad Co.* 109 id. 413; *Cobb* v. *Lavalle,* 89 id. 331.

Where an outstanding title is shown to the premises in controversy in a third person, the plaintiff in ejectment cannot recover, though defendant may not be able to connect himself with that title. *Cobb* v. *Lavalle,* 89 Ill.

331; *Stuart* v. *Dutton*, 39 id. 91; *Rupert* v. *Mack*, 15 id. 540; *Masterson* v. *Cheek*, 23 id. 72.

Coal lands are mineral lands, within the meaning of the statutes in reference to mining rights and mines and mining lands. *Mullan* v. *United States*, 118 U. S. 271; *Hyatt* v. *Bank*, 113 id. 408.

Title to mines may be shown by documentary evidence, or, in the absence thereof or in opposition thereto, by proof of possession and acts of ownership under the Statute of Limitations. *Caldwell* v. *Copeland*, 37 Pa. St. 427.

Actual possession of a portion of a mining claim may, by custom, be constructive possession of the whole claim. *Hicks* v. *Bell*, 3 Cal. 219; *Attwood* v. *Fricot*, 17 id. 37; *Pralus* v. *Mining Co.* 34 id. 558; *Mining Co.* v. *Stranahan*, 20 id. 198; *English* v. *Johnson*, 17 id. 107.

Mere prior occupancy is sufficient in ejectment, and a claim under a deed or color of title is equivalent to a constructive possession of the whole claim, and under such color of title a plaintiff may recover in ejectment the entire claim, and not merely the area actually occupied. *Richardson* v. *McNulty*, 24 Cal. 339; *Harris* v. *Equator Co.* 3 McCrary, 14; *Attwood* v. *Fricot*, 17 Cal. 37.

Where there has been a severance of the coal from the surface by deed, an exclusive and continued enjoyment of the surface will not confer title to the coal and minerals, under the Statute of Limitations. *Armstrong* v. *Caldwell*, 53 Pa. St. 287.

Where the owner of the surface of land claims title to the minerals beneath by adverse possession, he must show a possession of the minerals distinct from the possession of the surface. *Caldwell* v. *Copeland*, 37 Pa. St. 427.

Where part of a tract is reduced to possession under a deed for the whole, the possession will embrace all the land described in the deed. *Scott* v. *Delany*, 87 Ill. 146; *Austin* v. *Rust*, 73 id. 491.

In case of unoccupied lands, title draws after it possession until actual entry is made. *Moore* v. *Vail*, 17 Ill. 185.

KIMBROUGH & MEEKS, and LAWRENCE & LAWRENCE, for appellee:

To avail of the benefits of the seventh section of the Limitation act the land must have been vacant and unoccupied, and all taxes must have been paid for seven successive years by the claimant or by those through or under whom he claims. *Hurlbut* v. *Bradford,* 109 Ill. 397; *Whitney* v. *Stevens,* 89 id. 53.

Seven years must intervene between the first payment of taxes and the taking of possession. *McConnell* v. *Konepel,* 46 Ill. 519.

Estoppel *in pais* is not available in an action of ejectment. It is considered only in a court of equity. *Winslow* v. *Cooper,* 104 Ill. 235; *Stock Yards* v. *Ferry Co.* 102 id. 514.

Equitable defenses are not admissible in an action at law. 1 Chitty's Pl. (12th Am. ed.) 1.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was ejectment brought by the appellee, against the appellant company, to recover the coal and mineral underlying the east half of the south-east quarter of section 34, township 19, north, range 12, west, in Vermilion county, Illinois. The defendant filed a plea of not guilty, and the cause was submitted to the court without a jury. The declaration was amended so that it described and claimed only the undivided five-sixths of the said tract. The judgment of the court was, the appellee was the owner of and entitled to the possession of the property as described in the amended declaration.

It was stipulated by the parties that the appellee was the owner of the surface of the land in question, and the title in fee to the said tract of land, including the coal and mineral, at one time rested in one Harvey Sandusky. It appeared said Harvey Sandusky severed the estate in the coal and minerals underlying the tract from the estate in the surface, and that the title to the coal and minerals passed from him by a deed duly executed

by him in 1863 or 1864. Each of the litigants endeavored to trace title to the estate in the coal and minerals from said Harvey Sandusky, and the appellant also claimed title under the Statute of Limitations.

Many objections were made to different deeds presented by the respective parties and many exceptions saved to the rulings of the court upon such objections and upon other points, but in the view we have taken of the case it is not necessary we should investigate as to the correctness of such rulings, for, independently of and aside from them, the judgment of the court should have been for the appellant.

It appeared one Bernice Morrison, on the sixth day of March, 1879, obtained a deed regular and valid upon its face, purporting to convey to her the coal and mineral underlying the said tract. Nothing appeared to question that she obtained and held such title in good faith. This title passed by *mesne* conveyance to the appellant company. Said appellant company contended it appeared from other deeds produced in evidence that the title held by Harvey Sandusky passed by *mesne* conveyances to and vested in the said Bernice Morrison by the deed to her before mentioned. Without assuming to decide this contention, it is sufficient to say the deed to Bernice Morrison constituted good color of title in her, and was made and held in good faith to the said separate estate in the coal and minerals in said tract, and that such color of title passed to and vested in the appellant company by a deed dated October 28, 1895, and that under such deed the appellant company entered into possession of the premises in question by means of an entry driven from the adjoining mine, and began to mine and remove coal therefrom some months before the suit was instituted, and was so in possession and so engaged at the time of the institution of the suit. It further appeared that the estate in the coal and mineral in said tract was assessed and taxed separately from the estate

in the remainder of the land as early as the year 1880. Counsel for appellant company assert it appeared in the evidence that said Bernice Morrison, and those holding under her, to and including the appellant, paid all taxes annually assessed for the full period necessary to complete the bar of the statute in that respect. This position is challenged by counsel for appellee only as to the payment of the taxes for the year 1895,—one of the years of the period. The tax receipt for that year produced by the appellant described coal and mineral underlying a tract of land in town 18, whereas the property in question is in town 19. The collector's book for the year 1895 was, however, offered in evidence, and the entry made by the collector on the book established the appellant company paid the taxes for the year 1895 on the premises in controversy. It is true, during this period of time, and for a period of more than ten years before, the appellee was in possession of the surface of the tract and paid taxes thereon, but during all this time it was proven he knew the estate in the coal and mineral in the tract had been separated from the estate generally in the land, and that it was taxed separately from his estate therein. He purchased the certificate of the sale of the coal and mineral at the tax sale for year 1885, and received the money paid for the redemption thereof.

If the estate in the coal and mineral in this tract may properly be regarded as comprehended within the meaning of the words "vacant and unoccupied land," as those words are employed in section 7 of chapter 83 of the Revised Statutes, entitled "Limitations," it is beyond question the appellant has brought its case and claim of title to the estate in controversy within the operation of the provisions of that section, and should have been adjudged by the court to be the owner of said estate according to the purport of its paper title therefor. If the estate in question should be deemed "land," it is clear it could not be held to be occupied by or to have been in

the possession of the appellee by virtue of his undisputed possession of the surface of the tract. The general rule that the possession of the surface carries with it possession of all minerals beneath the surface has no application where the title to the surface has been severed from the minerals. Speaking upon that subject it was said in *Caldwell* v. *Copeland*, 37 Pa. St. 427: "It is not true that after such a severage (by deed) the possession of the surface is possession of the underlying minerals. That mines may form a distinct possession and a different inheritance from the surface lands has been long settled in England, as may be seen by reference to the cases cited in the two opinions heretofore delivered in this case, and reported as *Caldwell* v. *Fulton*, 31 Pa. St. 476, 482, (72 Am. Dec. 760.) (See, also, *Barnes* v. *Mawson*, 1 Mau. & Sel. 84.) The acts of ownership, however, which constitute possession and confer title must be distinct from such as are exercised over the surface.—*Tyrwhitt* v. *Wynne*, 2 Barn. & Ald. 554; *Cullen* v. *Rich*, Bull. N. P. 102." And in *Armstrong* v. *Caldwell*, 53 Pa. St. 287, it was said: "Where there has been a severance of the coal from the surface, by deed, an exclusive and continued enjoyment of the surface will not confer title to the coal and minerals, under the Statute of Limitations." And in Washburn on Real Property (vol. 2, p. 377,) it is said: "As a consequence of this double ownership of the surface and the mines below, no mine owner is affected by any acts of possession for gaining an adverse title done upon the surface."

That the possession of the surface of a tract of land does not constitute possession of underlying coal and minerals when the same has been severed has been frequently judicially declared. (*Williams* v. *Gibson*, 84 Ala. 228; *Hartwell* v. *Camman*, 2 Stock. Ch. 128.) In Barringer & Adams on Law of Mines and Mining (p. 568) it is declared that where the ownership of minerals in place is severed from the ownership of the soil, the possession of the surface, merely, is not possession of the minerals.

It cannot be regarded otherwise than that coal and minerals in place are land.    2 Washburn on Real Prop. 377; 2 Blackstone's Com. 16; Anderson's Law Dic. title "Land."

Because of the very large mining interests in that State the courts of Pennsylvania have been called upon to consider and determine this question, and the following extract from the opinion in the case of *Lillibridge* v. *Lackawana Coal Co.* 143 Pa. St. 293, may be regarded as a satisfactory and comprehensive statement of the law here involved: "We have emphatically decided that coal and other mineral beneath the surface is land, and is attended with all the attributes and incidents peculiar to the ownership of land.    We have held the mineral to be a corporeal, and not an incorporeal, hereditament; that the surface may be held in fee by one person and the mineral also in fee by another person; that the mineral may be subject to taxation as land, and the surface to an independent taxation as land when owned by a different person; that possession of the mineral may be recovered by ejectment, and title to it may be acquired by adverse possession under the Statute of Limitations.    *  *  *    In short, we have for nearly half a century judicially regarded the ownership of mineral, where it has been properly severed from the surface, as the ownership of land to all intents and purposes.    *  *  *    In other words, mines are land, and subject to the same laws of possession and conveyance.—*Caldwell* v. *Fulton,* 31 Pa. St. 475; *Caldwell* v. *Copeland,* 37 id. 427; *Scranton* v. *Phillips,* 94 id. 15; *Sanderson* v. *Scranton,* 105 id. 469; *D. L. & W. R. Co.* v. *Sanderson,* 109 id. 583." And it was said by the same court in *Caldwell* v. *Copeland, supra:* "Title to mines or minerals, distinct from title to surface of land, may be shown by documentary evidence, or, in the absence thereof or in opposition thereto, by proof of possession and acts of ownership under the Statute of Limitations."

In our own courts, in the case of *Manning* v. *Frazier,* 96 Ill. 279, it was held the grantor of coal and mineral in

place was entitled to enforce the equitable lien of a vendor, and it was there said (p. 285): "That the coal and other mineral in the mine, under the soil, was real estate, is too plain to admit of discussion. And it is equally true and manifest that, as such, it was capable of being conveyed like other real estate; and the coal, stone and ore thus situated was conveyed by complainant to Squire and Payne, and they thereby received an estate capable of being inherited and conveyed to others." And in the case of *Ames* v. *Ames*, 160 Ill. 599, the question was presented whether, in a proceeding for the partition of lands among tenants in common, the court sitting in chancery had power to separate the ownership of the surface from the ownership of the underlying minerals, and allot the fee in the surface to one and the fee in the mineral to another of the tenants. In the course of the opinion it was said (p. 600): "Coal underlying lands may be acquired by a title absolute and in fee in one person whilst the right to the surface is in another. Each may be held by separate and distinct titles in severalty, and each is a freehold estate of inheritance, separate from and independent of the other. The only distinction as to the respective rights rests on the principle that the servient estate owes the servitude of affording sufficient supports to sustain the surface.  *  *  *  The right of the owner of land to convey the coal and mineral rights underlying the land and reserving the surface absolutely in fee has long been recognized. When such conveyance is made two separate estates exist, and each is distinct. Each may be conveyed by deed, each may be devised under a will, each will pass to the heir under the Statute of Descent, and each is subject to taxation. (*In re Major*, 134 Ill. 19.) In all these phases each estate passes and must be treated as real estate. These principles are in effect sustained by this court in *Locey Coal Mines* v. *Chicago, Wilmington and Vermilion Coal Co.* 131 Ill. 9. Mining claims have been recognized as legal estates of freehold, (*Merritt* v. *Judd*, 14 Cal. 60,)

and subject to partition. (*Hughes* v. *Devlin*, 23 Cal. 502.) The right to partition was collaterally recognized in *Janes* v. *Wagner*, 66 Pa. St. 429. Two separate estates and interests being in existence, in principle there can be no difficulty in recognizing separate titles."

Authorities are abundant that a conveyance of the minerals in or under a tract of land passes an estate in fee, and that the owner thereof has all the rights of an owner of land in fee, and may invoke the same remedies to assert or defend his rights and protect his title as may the owner of a fee estate in land generally. (Barringer & Adams on Law of Mines and Mining, p. 36.) And in the same work, on page 568, the authors remark: "In some States and territories special limitations have been imposed by statutes upon suits for the recovery of mining property, but in the absence of such limitations such suits are governed by the general statutes relating to actions for the recovery of real estate."

The conclusion, then, seems to be inevitable that coal and minerals in place, where the title thereto has been severed from the title to the surface, constitute land as fully as does the surface, and as such are subject to all the laws of possession and conveyance of real estate, and the owner thereof has all the rights of an owner in land, and may invoke every legal right to assert and defend his title that is provided for owners of title in fee to the surface, and no reason is perceived why he should be denied the beneficial operation of our Statute of Limitations.

It is, however, urged by attorneys for appellee that coal and mineral beneath the surface are not within either the spirit or letter of the section of the Limitation act in question, for the reason that, as they allege, such property was unknown to commerce in Illinois at the time the section of the law was first enacted, in 1839. That such property was unknown to commerce in this State at that time is left by counsel for appellee to rest

upon their mere assertion; but if it could be conceded to be true that at the time of the first enactment of the said section the vast coal fields of the State had not been developed, and that the title to the coal and other minerals had not, in any single instance, been separated from the title to the surface, yet it was then a well established rule of law that such separation might be lawfully made, and well known that it had been found highly convenient and advantageous in other States and countries to make separation of the ownership of the surface from the minerals underlying it, and it is more reasonable to believe that the section was enacted in view of the existing state of the law, and of the possibilities and probabilities that the development and growth of the State would make it desirable that such separation of estates in the surface and the minerals underlying should be made in the future, and that the law was enacted in view of probable future necessity therefor.

It follows, if we are right in what has been said, that the appellee should not have prevailed in the trial court, but that the judgment in that court should have been that the appellant was not guilty.

The judgment must be reversed and the cause remanded for further proceedings in conformity with this opinion.

*Reversed and remanded.*

Subsequently, upon considering the petition for a rehearing in this case, the following additional opinion was delivered by Mr. JUSTICE BOGGS:

In the brief of counsel for appellee the position of appellant company in its brief that the proofs established it had complied with the requirements of section 7 of the Statute of Limitations as to the payment of taxes for the statutory period, was responded to as follows,—to quote from page 14 of appellee's brief: "It has sought to prove possession and payment of taxes for seven successive years, and the payment of taxes for a like period, with-

out actual possession, treating it as unoccupied land. The proof of payment of taxes for the statutory period is not satisfactory. There is not any proof that the taxes for 1895 were paid on this property. A tax receipt was read in evidence for taxes of 1895 on east half south-east quarter section 34, town 18, (instead of 19,) range 12, over objection of the plaintiff—no ruling by the court. There was no proof to supply this defect, and we say there is not evidence of seven successive years' payment of taxes." In the reply brief appellant met this alleged defect in the proof, as follows,—to quote from appellant's reply brief: "Counsel for appellee next contend that we have not shown payment of taxes for the statutory period of seven years because there is a mistake in the description in the tax receipt for the taxes of 1895, shown at Abst. 46, R. 144; but had counsel for appellee turned over to Abst. 49, R. 150, they would have found that we also proved payment of taxes for the year 1895 by the town collector's tax book, where the description is correct and the taxes are re-ceipted as having been paid by the Catlin Coal Company."

This was the only issue made by the parties as to the sufficiency of proof of payment of taxes. We consulted the abstract and record as to it, and found it appeared the appellant company produced in evidence the collect-or's book for the year 1895, and that it appeared from an entry made by the collector opposite this coal and min-eral land in question, that the appellant company paid the taxes for 1895 to said collector. Section 163 of chap-ter 120 of the Revised Statutes, entitled "Revenue," made it the official duty of the collector to make the entry, and it therefore became competent proof of the payment, and fully explained the discrepancy in the description in the tax receipt for that year.

Finding the only objection or suggestion advanced by the appellee as to the sufficiency of the proof of payment of taxes to be wholly untenable, we proceeded to dispose of the question whether property in the coal and mineral

underlying the surface was land, within the meaning of the Limitation act, and whether that statute was applicable to such property. The petition for rehearing does not question the correctness of the conclusion reached upon that point, but asks the judgment and decision of this court upon it be opened and the cause again argued in order to allow appellee to be heard to insist it does not appear from the proof in the record the full period of seven years elapsed between the date of the payment of the taxes for the first year of the period and the beginning of the suit or the taking of actual possession by the appellant company. Rule 30 of the rules of this court, by force whereof this petition for a rehearing is filed, provides the petition shall state concisely the point supposed to have been overlooked or misapprehended by the court. This petition is not based upon the ground the court overlooked, misapprehended or erroneously decided any point or points presented by appellee, or any position assumed by counsel for appellee in their brief submitting the cause to this court for decision. If the court proceeded to decision upon an erroneous assumption as to the evidence upon the points mentioned in the petition for a rehearing, it was because the argument of the appellee proceeded upon the same assumption as to the true state of the case.

If our decision finally determined the rights of appellee we might be disposed to open the judgment and order the points mentioned in the petition for a rehearing to be argued by the parties and submitted for our determination; but our decision but remands the case to the circuit court, to be again tried upon evidence produced anew by the respective parties. At this trial appellee is not to be deemed concluded by our opinion upon any matter of fact relating to the payment of taxes. We have modified the opinion to remove all question upon that point, and we decline to grant the petition for rehearing, but deny the prayer thereof.                    *Petition denied.*