(Nos. 26924, 26925.—

SHELL OIL COMPANY, INCORPORATED, *vs.* JOE MOORE *et al.*, Appellants.—(C. F. FRAZIER *et al.*, Appellees.)—LILLIAN J. HALL *et al.*, Appellants, *vs.* MARY LOUISE MOSLEY *et al.*—(SHELL OIL COMPANY, INCORPORATED, *et al.*, Appellees.)

*Opinion filed, March 16, 1943—Rehearing denied May 14, 1943.*

ECKERT & PETERSON, HUGH V. MURRAY, HERBERT H. THOMAS, McLIN J. BROWN, and WILLIAM B. JOHNSON, (TIM G. LOWRY, OWEN RALL, and HERBERT W. DEY, of counsel,) for appellants.

J. T. LAMB; JAMES P. MIZE, F. C. LOVE, CRAIG & CRAIG, ROY C. MARTIN, CHARLES E. FEIRICH, ESSINGTON, BEEBE & PRATT, and WILLIAMS & HARRISON, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

The complaint in this case (consolidated here with No. 26925) was filed by Shell Oil Company, Inc., as lessee of the Chicago, Wilmington and Franklin Coal Company, under which it claimed the right to oil and gas under-

lying certain lands occupied by appellants, and the right to drill and explore for the same. The coal company executed such lease as the purported owner of the mineral estate in said land. The appellants were in possession of the surface under a deed which conveyed to them the surface only, and contended the coal company neither owned the oil and gas underlying said land, nor did they have a right to use the surface for the purpose of drilling for oil and gas, and consequently had no title to the oil and gas, or the right to explore for oil and gas which they could convey to appellee Shell Oil Company, Inc. The circuit court of Franklin county entered a decree sustaining the claims of appellees, and appellants appeal directly to this court as a freehold is involved. *Poe* v. *Ulrey,* 233 Ill. 56; *Cravens* v. *Hubble,* 375 id. 51.

It is stipulated, in No. 26924, that on August 4, 1905, J. T. Chenault was the owner in fee simple of certain land, and that on said date he and his wife executed and delivered to John H. Hill a deed in words and figures following:

"Warranty Deed

THIS INDENTURE WITNESSETH, That the Grantors, J. T. Chenault and N. J. Chenault, his wife, of the City of Benton, County of Franklin and State of Illinois, for and in consideration of the sum of Four Thousand Dollars in hand paid, Convey and Warrant to John H. Hill of Benton, County of Franklin and State of Illinois the following described Real Estate, to-wit:

The surface only of the following described land, to-wit: The North West quarter of the South West quarter and the South West quarter of the North West quarter all in Section Twenty-five (25), Township Six (6) South, Range Two (2) East of the Third P.M., absolutely and specifically reserving the right to mine and remove all the coal and other minerals underlying said land without any liability for surface subsidence caused by mining out the coal and other minerals and from not leaving pillars or artificial supports under said land and the further right to make underground passages or entries through, to and from other mines and lands adjacent thereto, and with the right to the perpetual use of the same for mining purposes.

It is also covenanted and agreed that the grantor herein, his heirs and assigns, shall have the right to take and use as much of the surface of the said land as may be determined necessary for the purpose of erecting, maintaining and operating hoisting, air, pumping and escape shafts, drains, ditches and reservoirs and the necessary roadways and railroad tracks to and from the same, with the right of way for any railroad necessary or required to carry said coal to market; but all land the surface of which is so taken, shall when occupied, be paid for at the rate of Fifty Dollars per acre. If the surface of any land that is occupied by the buildings or other permanent improvements is taken, the full cash value of all such permanent improvements shall be paid said land.

Situated in the County of Franklin, in the State of Illinois, hereby releasing and waiving all rights under and by virtue of the Homestead Exemptions laws of this State.

Dated this 4th day of August, A.D. 1905.

J. T. Chenault,    (Seal)
N. J. Chenault.    (Seal)"

Then follow the ordinary certificates of acknowledgment and recording.

The same form of deed is involved in No. 26925, and the authorities referred to in No. 26924 adopted by reference.

It is the first contention of appellants that this deed properly construed reserved to the grantor J. T. Chenault only the coal, and therefore its effect was to convey to Hill, the remote grantor of appellants, all of the estate in said land except the coal. In other words, it is contended that after Chenault made his conveyance to Hill the only estate remaining in him was in the underlying coal, and the effect of other language contained in the deed was to negative the conveyance of oil and gas, leaving all of the title to said land, except the coal, in the grantee Hill, and therefore by mesne conveyance in appellants. As a part of this claim it is also contended the term "coal and other minerals" does not include oil and gas, and that by a proper construction of said deed, even if coal, oil and gas did not pass by the conveyance, there was no right in appellees to use the surface of the land to drill for oil and gas.

560

The critical point for determination is the proper construction of said deed to ascertain the intention of the parties. The position taken by appellants is that since the ordinary conveyance of land by legal description as a part of the plane surface of the earth has, from ancient times, been considered as conveying not only the surface but everything above and below the surface, therefore, a like description which designates "surface only" would carry with it everything from the sky above to the depths below not otherwise specifically excepted. They rely upon the maxim "To whomsoever the soil belongs he also owns to the sky and to the depths."

With this premise it is contended the use of the words in the deed "the *surface only* of the following described land" has no other effect than to designate the surface description of the tract conveyed, and, since the reservation "to mine and remove coal and other minerals" is limited by other language, the surface owner takes all of the real estate above and below the surface described, except coal that is reserved by its specific description.

Appellants properly urge the purpose of construing a deed is to arrive at the intention of the parties by examining all portions thereof, and its effect is to be gathered from the entire instrument, and the purpose, if legal, should be enforced so as to not defeat the manifest intention of the parties; and that every word and clause within the instrument should be construed, and if possible, given effect. (*Tallman* v. *Eastern Illinois and Peoria Railroad Co.* 379 Ill. 441; *Magnolia Petroleum Co.* v. *West,* 374 id. 516; *Woods* v. *Seymour,* 350 id. 493.) To ascertain this intention it is necessary to examine the instrument under consideration and determine not only what is granted by the terms thereof, but also what is not granted, and also what was intended by the parties by the covenant or reservation following the granting clause.

Upon the contention of appellants that the effect of this deed was to grant all of the estate in the land described except the coal, counsel have cited a number of cases from other jurisdictions construing deeds containing similar language in the granting clause, and these courts have arrived at different results. But our view of the case is that the principles applicable to the conveyance in question are well within the pronouncements of this court, even though the specific form of deed here involved has not been presented for interpretation.

It has long been settled in Illinois that the mineral estate may be severed from the surface estate by a grant specifically of the minerals, reserving the surface, or by a grant of the surface reserving the minerals, and, when this has been accomplished by a deed, two estates exist in the land which are subject to independent ownership and to separate taxation, and which may be devised or conveyed like any other real estate. *In re Major,* 134 Ill. 19; *Ewing* v. *Sandoval Coal and Mining Co.* 110 id. 290; *Catlin Coal Co.* v. *Lloyd,* 176 id. 275; *Renfro* v. *Hanon,* 297 id. 353; *Transcontinental Oil Co.* v. *Emmerson,* 298 id. 394; *Updike* v. *Smith,* 378 id. 600; *Jilek* v. *Chicago, Wilmington & Franklin Coal Co. ante,* p. 241; Ill. Rev. Stat. 1941, chap. 94, sec. 6.

Deeds conveying minerals or surface without minerals have been construed by this court on many occasions, and the practice of severing such estates has been recognized and upheld for a period of over seventy years, and in addition has been sustained by statutory authority since 1861. (Session Laws 1861, page 146, sec. 2.) Cases have been repeatedly before this court involving lands where coal or other minerals have been severed by conveyance, and uniformly this court has referred to the estate after severance as the mineral estate and the surface estate in the lands. Thus in *Wilms* v. *Jess,* 94 Ill. 464, a tract of land was con-

veyed "except all coals and minerals of every description under the surface of said premises," and in a suit for damages for subsiding the surface by improper mining, among other things it was said: "Where the surface of land belongs to one and the minerals to another, no evidence of title appearing to regulate or qualify their rights of enjoyment, the owner of the minerals cannot remove them without leaving support sufficient to maintain the surface in its natural state." Here the term "surface" was used with respect to the land overlying the coal. In *Manning* v. *Frazier,* 96 Ill. 279, the deed conveyed "all of the coal, limestone, iron ore, rock oil and other minerals," and in passing upon a question arising out of said conveyance we said "that the coal and other mineral in the mine, under the soil, was real estate, is too plain to admit of discussion. And * * * the coal, stone and ore thus situated was conveyed by complainant to Squire and Payne, and they thereby received an estate capable of being inherited and conveyed to others." Here the coal and minerals are recognized to be an estate separate from the soil.

In the case of *In re Major, supra,* the question of taxing mineral estates was involved. Conveyance had been made of certain land reserving the coal and the right to mine the same. With respect to this reserved right we said: "We think it clear that the mining right, and the right to the coal and minerals reserved in the deeds and contracts, must be regarded as property, * * *. Such mining rights are recognized as property by section 7, chapter 94, of the Revised Statutes, which declares, that 'when the owner of any land shall convey, by deed or lease, any mining right therein, such conveyance shall be considered as so separating such right from the land that the same shall be taxed separately, and any sale of the land for any tax or assessment shall not include or affect such mining right.' By the 6th section of the same act such mining rights may be conveyed by deed or lease, etc., with like effect as deeds

and leases of real estate. It follows as a corollary from this statute, that when the grant is of the land, with a reservation of the mining right to the grantor, there is a like separation of the rights of the property as between the land and mines or mining rights, and each must be separately listed for taxation."

In *Catlin Coal Co.* v. *Lloyd, supra,* the deed conveyed "coal and other minerals." In deciding a suit involving damage caused by improper mining this court, among other things, said: "The general rule that the possession of the surface carries with it possession of all minerals beneath the surface has no application where the title to the surface has been severed from the minerals." And also, "The conclusion, then, seems to be inevitable that coal and minerals in place, where the title thereto has been severed from the title to the surface, constitute land as fully as does the surface, and as such are subject to all the laws of possession, * * * and the owner thereof has all the rights of an owner in land." Here the court in a case involving conveyance of "coal and other minerals" refers to everything outside of what is conveyed as "surface," and that which is conveyed is referred to as "minerals."

In *Lloyd* v. *Catlin Coal Co.* 210 Ill. 460, where damages were sought for failure to properly support land overlying the coal, everything above the coal was referred to in the opinion as "surface." In *Renfro* v. *Hanon, supra,* the owner of the fee made a conveyance of "all the coal, lead, oil, silver, gold, rock, fluids, ores, metals and all other minerals of every description found in and upon" certain land, "with the right to mine and remove the same." In that case the land had not been severed for taxation, and the occupant attempted to acquire title by adverse possession and the payment of taxes. Regarding this claim the court said: "Regardless, however, of any question of payment of taxes, it was necessary to prove possession of the minerals, and there could be none in law after the sever-

ance. The title to the minerals was severed by the deed from Richard Palmer and wife to R. N. Barbour, and where that is the case the possession of the surface does not carry with it the possession of minerals in place under the surface. By a severance separate estates are created, which are held by separate and distinct titles, and each estate is incapable of possession by the mere occupancy of the other."

In *Transcontinental Oil Co.* v. *Emmerson, supra,* the question involved was whether an oil and gas lease in ordinary form constituted tangible or corporeal property subject to taxation. The opinion entered exhaustively into the definition of property, which is said to be nothing more than the exclusive right of possessing, enjoying and disposing of a thing, and then held that an oil and gas lease which gave the right to enter upon the land for the purpose of prospecting and operating for oil and gas, laying pipe lines, etc., was the conveyance of an interest in the land itself, and constituted a freehold, and therefore constituted corporeal property.

In *Kinder* v. *LaSalle County Carbon Coal Co.* 301 Ill. 362, the deed conveyed "all the bituminous or stone coal, together with the right to mine the same;" and also quitclaimed "all the right in or title to the oil and minerals, of every description, underlying" certain tracts. In construing this deed we held the title to the minerals distinct from title to the surface of lands may be proved in exactly the same way as title to the surface.

We have thus referred at some length to cases in Illinois in which mineral estates were severed from surface estates, and in every instance called to our attention, where there was such a severance the word "surface" has been given a meaning equivalent to the word "soil" superimposed upon the minerals or mining rights severed by the conveyance. Where contracting parties use the term "surface" or "minerals" in a conveyance in which the entire fee-simple

title is not conveyed, they are presumed to have used it in the same sense as it has been used, defined and understood by the courts.

The granting clause in the deed under consideration uses the term "the surface only," and giving this its ordinary meaning would indicate the "surface alone," or "the surface and nothing more" was intended to be conveyed. Certainly with the presumed knowledge of the parties of the construction given conveyances of minerals or of surface rights excluding minerals, the words "surface only" serve to specify that, regardless of the presence of one or more different kinds of minerals underlying the soil, it is the intention of the grantor not to convey any minerals, and the intention of the grantee to receive nothing but the surface estate, which has a well-understood meaning in the law of this State.

Our attention has been called to decisions from other jurisdictions in which different results have been reached, but in each instance the conclusion of the court depended upon the construction of the deed conveying either the surface or the minerals, and the result was reached by construing limiting or descriptive clauses, which do not establish any general principle to be used in all cases. We think it is clear from the long line of decisions in Illinois that the conveyance of "surface," unless otherwise extended in meaning by the limiting of the quantity or kind of minerals conveyed or reserved, has the effect of passing title to the top surface of the land, together with such ancillary use of a portion under the surface for drainage, domestic water, foundations and other uses as will render it suitable and usable for the purposes intended.

In the deed before us the restriction in the granting clause is not applied to minerals but to the surface. When the grantee accepted the deed in question it must have meant to him the surface and nothing more. With the authority for severance of mineral from surface estate

established by decision and by statute, both the grantor and the grantee must have understood that the deed in question left in the grantor title to all minerals or mineral rights, for the same reason the deed conveyed nothing but "surface," and this severed the surface estate alone from the whole fee as the subject matter of the grant. The title to the minerals, or the right to explore for and take out minerals, remained in the grantor not by express reservation, but because they were never conveyed.

This leads us to a consideration of the contention of appellants that there was no specific reservation of oil and gas in the grantor, and even though the right to take the oil and gas was not conveyed to the grantee there existed no right in the grantor to go upon the surface estate of the grantee to explore for oil and gas. The deed in question, after conveying the surface alone, provides: "Absolutely and specifically reserving the right to mine and remove all the coal and other minerals underlying said land without any liability for surface subsidence, etc." While it is true that oil and gas is not here specifically mentioned, we have decided that oil and gas by the overwhelming weight of authority are minerals. (*Jilek* v. *Chicago, Wilmington & Franklin Coal Co. supra,* and cases therein cited.) And these words coupled with the fact that only the surface was included in the grant would clearly leave the mineral estate, including the right to explore for oil and gas, in the grantor.

The parties have both approached the question of the right of appellees to explore for and recover the oil and gas as though it were based alone upon an implied right, without giving much consideration to the specific provisions of the deed itself. In construing a deed it is necessary to give effect to each word and clause contained therein, which requires an analysis of the so-called reservation part of the deed with respect to rights to take and remove coal and other minerals. As pointed out, the deed conveys the surface only, and, since the grantor owned the entire fee,

any minerals forming a part of the subsurface still belonged to the grantor for the simple reason they were never conveyed. The reservation contained in the deed is the right to mine and remove minerals. The provision is "absolutely and specifically reserving the right to mine and remove all of the coal and other minerals underlying said land without liability for surface subsidence caused by mining out coal and other minerals." And there is a further right reserved to use underground passages for removing coal to and from other mines. There is then a third paragraph that the grantor shall have a right to take and use the surface for the purpose of hoisting, air, pumping and escape shafts, drains, etc., necessary or required to carry said coal to market, at a price of $50 per acre.

The whole deed therefore upon analysis contains the following provisions: (1) There is a granting clause which conveyed only the surface as distinct from the minerals. If the deed had stopped here and nothing more had been said the grantor would retain all minerals for the reason they were not conveyed. (2) The next provision concerns the right to remove coal and minerals without any reservation of the minerals themselves. The reservation is to the effect that the coal and minerals may be mined and removed without any liability for damage caused by subsidence. This provision was apparently incorporated upon the theory that since the mineral estate was not conveyed the grantor retained title to the same, and it was therefore not necessary to reserve them, but the right to mine and remove them should be specifically provided. This portion of the reservation is sufficiently broad to reserve the right to drill for oil and gas, since oil and gas have been held to be minerals. ˙ If nothing further were contained in the deed it would seem the grantor retained title to the minerals by virtue of having conveyed only the surface, and retained the right to remove all minerals not by virtue of an implied right but by virtue of an express reservation

of the right to remove coal and minerals without liability for subsidence which its taking might cause. (3) The next question to be considered is whether any provisions of the deed are sufficient to reduce the grantor's rights as construed above. The right to mine and remove coal and other minerals, without liability for surface subsidence by mining out the coal and other minerals and for not leaving pillars and artificial supports, obviously does not take away any rights of the grantor to take the coal or minerals, but is clearly intended to give him an additional right, *viz.*, to take them without any liability for damage which he may cause to the surface in so removing them. This provision is not inconsistent, and therefore does not limit the preceding sentence, which expressly reserves the right to mine and remove. (4) The provision following, that the grantor retains the right to make underground passages and entries through, to and from other mines and adjacent lands in perpetuity, is intended to increase the grantor's mineral estate to the extent that passageways may be used in perpetuity, even though it might be construed without such limitation that the surface estate could not be burdened with any greater privilege than by passageways for removing the coal from under the described land. This provision does not limit the grantor's estate in the minerals.

A construction of the deed down to this point would leave in the grantor the entire mineral estate with the express right to mine and remove, and an express right to be free from damages for subsidence, and the perpetual use of underground passageways. No additional compensation is provided to be paid the grantee for any effect such reserved rights may have upon the surface estate, although some of these reserved rights must necessarily conflict with the enjoyment of the surface.

It must now be considered whether the third or final paragraph of the deed is such as to alter the construction given the preceding provisions of the deed. This para-

graph covenants that the grantor shall have the right to take and use so much of the surface as may be necessary for the purpose of erecting, maintaining and operating hoists, air, pumping and escape shafts, drains, ditches and reservoirs and necessary roadways and railroad tracks to and from the same, with the right of way for any railroad necessary or required to carry such coal to the market; but all land, the surface of which is so taken, shall when so occupied be paid for at the rate of $50 per acre. This paragraph concerns the right to take surface land only for the purposes mentioned. A fair construction of this paragraph is that "to take" as used therein means more than merely the *use,* but also means taking the title to the surface, as the payments to be made are substantial; in fact, the same as the recited purchase price in the deed of conveyance. This construction is aided by the fact that the land taken by such authority is to be used for the erection of improvements which would be of considerable value, title to which would be in the grantor. The purpose is to permit the grantor to reacquire title to parts of the surface. The preceding provisions of the reservation did not concern acquiring title. This is a right which goes beyond anything previously set out in the deed. The express right reserved in the deed to remove the minerals would give the grantor the right to use the surface for such purpose, but would not give him title to the surface. The paragraph under discussion is by its language applied to coal rights, because all of the operations mentioned, such as hoisting air and escape shafts, roadways and railroad tracks, are enumerated as being necessary to carry said coal to market. The right to take the land and to build the structures thereon is not reserved for any rights except coal rights. Obviously, such an added provision does not limit the general right to explore for and to take the minerals from the ground, but gives special rights when coal is taken.

The grantor would not, however, have the right to acquire such land for any purpose except in connection with mining coal, and he would have no implied right to acquire title to the surface for any other purpose, and would therefore have no right to acquire a title to any part of the surface for the purpose of taking and removing oil or gas. This, however, is not necessarily inconsistent with the right expressly reserved to remove coal and other minerals, in which case the grantor would have surface rights only so long as minerals were being removed. The third paragraph of the deed contains no provision indicating an intent to reduce or limit the rights already retained by the grantor in the preceding provisions thereof, but merely additional acquisition of surface, if necessary, for the purpose of removal of coal.

It is our conclusion that the deed in question should be construed as follows: By the granting clause the grantee was given title to the surface estate; the grantor retained title to the mineral estate, including the right to explore for and remove oil and gas; the grantor has expressly reserved the right to remove the minerals, which expressly reserved right gives him the authority to remove the minerals through the surface and by the use thereof,—otherwise there would be no reason for expressly reserving the right to mine and remove. The provisions of the deed referring to subsidence and underground passages gives the grantor rights which he would not have from the mere reservations of the minerals, or at least the rights might be doubtful.

The provision concerning taking title to a part of the surface of the land for a given consideration is to be used only in case coal is mined, and in such instance the payment of the money gives the right to acquire so much of the surface estate as is necessary for the purpose. But, since the title may be acquired only in connection with coal mining, the grantor has no right to take title to any

part of the surface for the purpose of removing other minerals than coal, since the reacquiring of title is specifically limited to the purpose of mining and transporting coal. The deed under consideration, however, absolutely and specifically reserves the right to mine and remove all of the coal and other minerals underlying said land. The right was retained by the owner of the minerals in the same deed in which he conveyed the surface estate. A fair construction of the deed therefore excludes consideration of the numerous authorities cited by both sides upon the implied right of appellee to use appellants' surface land for the purpose of producing oil and gas. The matter seems to have been adequately settled by the provisions of the deed itself.

After a careful consideration of the deeds involved in both cases, as well as the exhaustive briefs of the counsel for both parties, we are of the opinion the conclusion reached by the circuit court of Franklin county was correct, and its decrees are accordingly affirmed.

*Decrees affirmed.*

Mr. Justice Smith took no part in this decision.