703 P.2d 693

Joseph Wendell STUCKI, Jean T. Skinner, Mary Lou T. Lambourne, Mabel S. Athay, and Pearl S. Gee, Plaintiffs-Appellants,

v.

Weston J. PARKER and Lynne Ann Parker, husband and wife, Defendants-Respondents.

No. 15493.

Supreme Court of Idaho.

July 12, 1985.

Gordon S. Thatcher, Rexburg, for plaintiffs-appellants.

Clyde G. Nelson, Soda Springs, for defendants-respondents.

BISTLINE, Justice.

This case involves a controversy over ownership of the mineral rights on two parcels of property located near Paris, Bear Lake County, Idaho. It is undisputed that the appellants own the right to all the phosphate, and that the respondents own the surface rights. Ownership of the remaining mineral rights is in dispute.

In 1919, Beak Lake Phosphate Company acquired title to two parcels of real property. Bear Lake Phosphate subsequently conveyed parcel 2 to F.S. Beck on September 21, 1922. Parcel 1 was conveyed to Charles Wyler on September 22, 1922. The relevant language in each of the two deeds

in the conveyance to Wyler and to Beck provided:

> All of the surface rights in and to and upon the following described tract of land (with the reservations and hereinafter specifically set forth) ... (description)
>
> The Grantor herein, however, reserves unto itself all the phosphate and phosphate rock in the lands above described, and reserves to it or persons authorized by it, the right to prospect for, mine, and remove such deposits from the same.
>
> ....
>
> Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, and remainder and remainders, rents, issues and profits thereof.
>
> To have and to hold, subject to the foregoing reservations.
>
> R., Vol. 2, p. 39.

Both F.S. Beck and Charles Wyler are predecessors in interest to respondents herein, Weston J. and Lynne Ann Parker.

In 1925, Joseph Smith Stucki obtained a monetary judgment against Bear Lake Phosphate Company, and executed on both parcels 1 and 2. At the sheriff's sale, Stucki bid in his judgment and acquired whatever interest Bear Lake Phosphate still owned in the property after having earlier conveyed to Beck and Wyler as aforesaid. Stucki is a predecessor in interest to the appellants Joseph Wendell Stucki, et al.

The instant action was filed by the Stuckis to quiet title in them to all of the mineral rights in the two parcels other than the phosphate. The trial court determined that the Parkers' predecessors had acquired all mineral rights except the phosphates by the surface rights deed. The trial court stated in its Finding No. 10:

> By viewing the four corners of the instruments by which Bear Lake Phosphate conveyed both parcels in 1922, there is no ambiguity in the language of

the deeds. Although Bear Lake Phosphate conveyed only the surface rights, the specific reservation out of the grant indicates that only mineral rights in phosphate were reserved.

The trial court went on to state in Finding No. 11:

> Even if the grant of the surface and the reservation of a particular mineral raises some ambiguity as to the ownership of the remainder of the minerals, the intent of Bear Lake Phosphate in conveying the parcels was to reserve only the rights to the phosphate deposits contained on and under the surface of the ground.
>
> R., Vol. 2, p. 39.

Further, the court concluded that a conveyance will be presumed to pass a fee simple estate, and, severance of minerals from the surface being not favored by the law, a conveyance should be construed against the splitting of mineral rights from the surface unless the intent to sever is clear. The trial court's view was that a specific reservation of a particular mineral results only in the severance of that mineral from the estate, and all other minerals pass with the surface rights. Accordingly, the court decided that the Stuckis were owners of nothing but the phosphate and phosphate rock deposits located on the property in question, while the Parkers were entitled to all the sub-surface property interests in the property other than the phosphate rights. Because we believe the district court erred as a matter of law, we reverse and explain wherein we differ from the lower court.

■ The district court found there was no ambiguity in the language of the deeds.[1] The rule of construction regarding the language in an instrument was set forth in *Meir-Nandorf v. Milner*, 34 Idaho 396, 201 P. 720 (1921), wherein this Court held that the language in the instrument itself must be first examined, and if the express meaning is plain, then it will control. *Meir-Nandorf, supra,* at 400, 201 P. 720. Moreover, the intention of the parties must be ascer-

---

1. *See* Finding of Fact No. 10 on p. 3, *supra*.

tained from the language of the deed itself where the language is not ambiguous. *Meir-Nandorf, supra,* at 400, 201 P. at 721; *Koon v. Empey,* 40 Idaho 6, 231 P. 1097 (1924). Further, this Court has adopted the rule that, "In interpreting and construing deeds, 'the primary rule to be observed is that the real intention of the parties, particularly that of the grantor, is to be sought and carried out whenever possible....'" *Hogan v. Blakney,* 73 Idaho 274, 279, 251 P.2d 209, 213 (1952) (quoting 16 Am.Jur., *Deeds* § 168, pp. 531–32). We agree with the district court that the language of the deed is not ambiguous.

We disagree, however, with the district court's Conclusion of Law No. 3:

> 3. A specific reservation of a particular mineral results only in the severance of that mineral from the estate, and all other minerals pass with the surface rights.

R., Vol. 2, p. 39.

As authority for this proposition the district court relied upon the 1923 West Virginia case of *Ramage v. South Penn Oil Company,* 94 W.Va. 81, 118 S.E. 162 (1923) and a short annotation following the publishing of *Ramage* in 31 A.L.R. at p. 1530. The *Ramage* court, in a 3–2 decision, held that a conveyance of the surface with a specific reservation of one or more enumerated minerals transferred the subsurface rights with the surface and only the specifically reserved minerals were retained by the grantor. The construction given a surface conveyance with specific reservations by the *Ramage* court does not appear to have withstood the test of time. Recent courts addressing the same issue have concluded that a grant of the surface with specific reservations results in a transfer of the surface only. As noted in *Ramage,* the closely split court there was overruling its own prior contrary holding in *Williams v. South Penn Oil Co.,* 52 W.Va. 181, 43 S.E. 214 (1902), which was a 4 to 1 decision. We are not persuaded that the holding in *Ramage, supra,* was sound law.

■ The correct interpretation of a deed which conveys the surface and then

lists specific reservations is this: the reservations relate only to that which was first conveyed, the surface. Without a construction in this manner, the insertion of the word surface becomes meaningless and only the reservation is of any import. When the grantor conveys the surface he means just that—a conveyance of the surface, and to hold otherwise controverts the clear intention of the grantor.

In *Jividen v. New Pittsburg Coal Co.,* 45 Ohio App. 294, 187 N.E. 124 (1933), the court held that only the surface passed by a deed conveying the surface only and then reserving coal and "other minerals." Likewise, in *Shell Oil Co. v. Moore,* 382 Ill. 556, 48 N.E.2d 400 (1943), the court held similarly as to a conveyance of the surface only. The court stated:

> We think it is clear from the long line of decisions in Illinois that the conveyance of "surface," unless otherwise extended in meaning by the limiting of the quantity or kind of minerals conveyed or reserved, has the effect of passing title to the top surface of the land, together with such ancillary use of a portion under the surface for drainage, domestic water, foundations and other uses as will render it suitable and usable for the purposes intended.

*Shell Oil, supra,* 48 N.E.2d at 404.

The *Shell Oil* court, citing *Catlin Coal Co. v. Lloyd,* 176 Ill. 275, 52 N.E. 144 (1898), also noted that the presumption that one who owns the surface also owns the mineral estate can be successfully rebutted where there has been a severance of the two estates:

> The general rule that the possession of the surface carries with it possession of all minerals beneath the surface has no application where the title to the surface has been severed from the minerals.

*Shell Oil, supra,* 48 N.E.2d at 403.

We believe the analysis by the *Moore* court constitutes sound reasoning through recognition of the severance of different estates.

*See also,* 54 Am.Jur.2d, Mines and Minerals, §§ 117 and 241.[2]

In a 1974 case, *Riedt v. Rock Island Improvement Company,* 521 P.2d 79 (Okla.1974), the Oklahoma Supreme Court, in an extremely well-reasoned and thorough analysis of the meaning of the word surface, concluded that a conveyance of the surface transferred only the surface. The court was construing a 1941 deed which conveyed the surface but reserved the coal and asphalt. The Oklahoma court concluded:

> We do not agree that the sale of the surface of the land concerned in this case conveyed the oil, gas, and other minerals, except coal and asphalt, as contended by plaintiffs.

*Riedt, supra,* at 80.

The Oklahoma court recognized that the inclusion of the term surface in the conveyance was understood by the parties to mean the uppermost crust of the earth.

Similarly, in *Large v. T. Mayfield, Inc.,* 646 S.W.2d 292 (Tex.App.1983), the Texas court concluded that the words "surface rights" were intended by the parties to the deed to be an express limitation on the estate granted. The Texas court stated:

> The words "Surface Rights" were intended as a limitation of the grant. To hold otherwise would be to give no significance to the words used by the parties to the deed. *Morriss v. First Nat. Bank of Mission,* 249 S.W.2d 269, 275 (Tex.Civ. App.—San Antonio 1952, writ ref'd n.r. e.). The additional phrase in parenthesis concerning "Mineral Rights" is merely a further explanation that only "Surface Rights" are being conveyed.

*Large, supra,* at 294.

We believe this construction of a surface conveyance followed by words of limitation represents a more sound and convincing interpretation of the intentions of the parties to a deed of this nature.

■ The district court's reliance on *Ramage, supra,* was misplaced. Had the parties intended the entire estate, less the phosphate, to be conveyed, the usual conveyance language combined with a legal description of the property would have achieved that goal. However, the grantor elected to convey specifically the surface rights. This effectively limited the conveyance to a transfer of the surface separate and apart from the subsurface. We are persuaded that the reservation of the phosphates was a limitation on the surface estate conveyed. Like the court in *Large, supra,* the reference to the phosphates directly modified the preceeding words granting only a surface estate.

One further item requires our attention. In a finding of fact the court stated that there was no ambiguity in the language of the deeds.[3] R., Vol. 2, p. 39. With what may be thought of as judicial ambivalence, in the conclusions of law, the court examined the word surface and concluded there was ambiguity:

> 6. Any ambiguity in the deeds should be construed against the grantor, Bear Lake Phosphate Company, and in favor of Parkers' predecessors. The term "surface" standing alone, might be interpreted as a non-conveyance of the minerals. On the other hand, a specific reservation of the phosphate rock would not

---

**2.** 54 Am.Jur.2d, Mines and Minerals, § 117 reads in pertinent part:

**§ 117.—Effect on possession.**
The rule that possession of the surface ordinarily carries with it possession of all the underlying minerals, obviously has no application where there has been a severance of the surface from the mineral estate. Since by severance separate estates are created, each estate is incapable of possession by mere occupancy of the other.... Moreover, the presumption that one having possession of the surface has also possession of the subsoil does

not exist where the surface and subsoil rights have been severed.
And § 241 provides in part:
There is a presumption that one in possession of the surface of mineral land also possesses the subsoil rights. But this presumption exists only where the surface and the mineral estate remain unsevered, and so it may be rebutted by showing a distinct title to the surface estate in one person and that which is underneath in another. (Footnotes omitted.)

**3.** *See* Finding of Fact No. 10 on p. 3, *supra.*

reserve all other minerals. Since there is ambiguity in the terms, the word surface will be construed broadly to include all rights not included in the specific reservation by the Grantor.

R., Vol. 2., p. 41.

We read this conclusion of law as being inconsistent with the court's findings of fact, and also read it as inconsistent with the court's contrary view that there was no ambiguity.

For the foregoing reasons the decision of the district court is reversed, and the cause is remanded with directions to enter findings, conclusions, and decree consistent herewith. Costs to appellants. No attorney's fees on appeal.

DONALDSON, C.J., and BAKES, J., concur.

HUNTLEY, Justice, dissenting.

I respectfully dissent and would affirm the trial court. In my opinion three principles of law control this case.

First, where deed language conveys the surface and reserves one specific mineral, the entire estate passes to the grantee except the mineral specifically reserved. *Ramage v. South Penn Oil Co.,* 94 W.Va. 81, 118 S.E. 162 (1923); *Anderson v. Pryor,* 51 Ohio App. 35, 199 N.E. 364 (1935); *West Virginia Dept. of Highways v. Farmer,* 159 W.Va. 823, 226 S.E.2d 717 (1976).

Second, where deed language conveying the surface and reserving one specific mineral is held to be ambiguous, the courts have consulted both the language of the deed and extrinsic evidence proving the intent of the parties. *Ramage v. South Penn Oil Co.,* 94 W.Va. 81, 118 S.E. 162 (1923); *Bogart v. Amanda Consolidated Gold Mining Co.,* 32 Colo. 32, 74 P. 882, 884 (1903); *Copenhaver v. United Fuel Gas Co.,* 110 W.Va. 69, 156 S.E. 884 (1931).

Finally, where the original grantor was involved in a business directly related to the mineral reserved (here the phosphate industry), there is a presumption that it was the grantor's intent to reserve only the

mineral stated. *Bruen v. Thaxton,* 126 W.Va. 330, 28 S.E.2d 59 (1943).

The trial court correctly analyzed the facts and the law applicable thereto in its Findings 9, 10 and 11, and in its Conclusions of Law 2 through 8 which read as follows:

9. At the time the deed was made, there was no oil or gas development in Bear Lake County, Idaho. There was no evidence that leases were being made for oil or gas in Bear Lake County. The only activity was in phosphate lands. Doubtless the oil and gas was not thought of by any of the parties when the deeds were effected.

10. By viewing the four corners of the instruments by which Bear Lake Phosphate conveyed both parcels in 1922, there is no ambiguity in the language of the deeds. Although Bear Lake Phosphate conveyed only the surface rights, the specific reservation out of the grant indicates that only mineral rights in phosphate were reserved.

11. Even if the grant of the surface and the reservation of a particular mineral raises some ambiguity as to the ownership of the remainder of the minerals, the intent of Bear Lake Phosphate in conveying the parcels was to reserve only the rights to the phosphate deposits contained on and under the surface of the ground.

CONCLUSIONS OF LAW

. . . . .

2. Under Idaho Code § 55–604, a conveyance will be presumed to pass a fee simple estate. The same reasoning applies to severance of a portion of the estate itself; severance of minerals from the surface is not favored by the law, and a conveyance should be construed against the splitting of the mineral rights from the surface unless the intent to sever is clear.

3. A specific reservation of a particular mineral results only in the severance of that mineral from the estate, and all

other minerals pass with the surface rights.

4. "In our judgment the term is ambiguous. And so, too, we think the term 'surface' does not have a well-defined legal meaning when used as the subject of conveyance, but its meaning may be limited and defined by the exception or reservation in the deed. If the deed grants the 'surface' but contains a reservation of all the mines and minerals, the grant includes all the land except the reservation; but, on the other hand, if it grants the 'surface' but contains a reservation of a specified mineral or minerals, then the grant includes all the land except the mineral or minerals specified." 31 A.L.R. 1521–1522.

"We repeat that where the term 'surface' is used as the subject of a grant, the grantor and the grantee have in mind a severance of the land into two parts, and while if but one part be designated, to wit, the surface, the grant may include all the land except the minerals, though that does not necessarily follow; but if the other be also expressed by reservation or exception, it appears to us that this clearly shows the intention of the parties; and the exception or reservation, as in the instant case, controls, limits, and defines the subject of the grant. 31 A.L.R. 1522

"In other words, should not the maxim, 'the expression of one thing is the exclusion of another,' apply? 31 A.L.R. 1519–1520

"... where the conveyance of the 'surface' is followed by an express reservation, we think the effect of the reservation is to limit it to those things which are so expressed." 31 A.L.R. 1520

"And so in this case, we hold that the express exception of the oil and gas excludes all other exceptions. We are not unaware of the contention made that the coal did not pass by the term 'surface' as used in the Lemley deed; but because it was not excepted or reserved, and the oil and gas were, we think all mineral passed but those expressly retained; hence the Lemleys got the coal." 31 A.L.R. 1521

"Where the grant or reservation is of a particular mineral, specifically named, only that mineral will pass, and all other minerals will remain the property of the owner of the fee, and in accordance with the doctrine of *ejusdem generis*, where a grant or reservation is of certain specified mineral and all other minerals, the words "other minerals" include only minerals of the same kind, and do not include a substance which, although a "mineral" in the broad sense of the term, is not similar to those mentioned, ... 58 C.J.S. 323

5. Under the holding of *Osborne v. Holford*, 40 Colo.App. 365, 575 P.2d 866 (1978), a conveyance of only the surface rights without an express specific reservation results in an implied reservation by the grantor of the mineral rights. If the surface is conveyed, however, with an accompanying clause which expressly reserves a specific mineral, only rights to the mineral names are retained by the grantor; all others pass to the grantee with the surface.

6. Any ambiguity in the deeds should be construed against the grantor, Bear Lake Phosphate Company, and in favor of Parkers' predecessors. The term "surface" standing alone, might be interpreted as a non-conveyance of the minerals. On the other hand, a specific reservation of the phosphate rock would not reserve all other minerals. Since there is ambiguity in the terms, the word surface will be construed broadly to include all rights not included in the specific reservation by the Grantor.

7. The plaintiffs, Stucki et al, are entitled to ownership of the phosphate and phosphate rock deposits located on the property in question.

8. The defendant, Parkers, are entitled to the entire mineral interest on the property save the phosphate rights owned by the plaintiffs, and such rights shall be quieted in the Parkers against

the plaintiffs and all other parties. Parkers are also the owners of the surface of the property in question.

I would affirm.

SHEPARD, J., concurs.