### AUGUST RICHARD

*v.*

### SILAS BENT.

COVENANTS FOR TITLE, *pass to remote grantee.* A remote grantee of lands may maintain an action in his own name against the original grantor, on a covenant in the deed of the latter, " that the said lands are free from all incumbrances," where the substantial breach of the covenant occurs after the assignment, and the whole actual damages are sustained by the assignee. Although in such case the covenant is nominally broken on the execution of the deed, the rule of the common law, that *choses in action* are not assignable, does not apply.

APPEAL from the Circuit Court of St. Clair county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

This was an action of covenant, commenced June 18, 1869, by Silas Bent against August Richard, to the October term, 1869, of the St. Clair Circuit Court. The declaration alleges that defendant, on the 20th of September, 1867, by his deed of that date, conveyed to one Elisha P. Freeman, of the city of St. Louis, and State of Missouri, a certain tract of land lying in the said city of St. Louis; that in and by said deed defendant covenanted with said Freeman, that said premises were free from all incumbrances, and that defendant would warrant and defend the title and possession of said real estate to said Freeman, his heirs and assigns, against the claim of any person whomsoever, against said premises; that on the 23d of September, 1867, said Freeman conveyed said premises to the plaintiff; that said Freeman, immediately after making the said conveyance to the plaintiff, took the benefit of the bankrupt law, and became, and still is, totally insolvent; that at the time of executing said deed by defendant to said Freeman, said premises were not free from all incumbrances, nor could plaintiff, as assignee of said Freeman, lawfully possess or quietly enjoy said premises free from all incumbrances; that defendant has not warranted and defended said premises to the

plaintiff, &c; that defendant has not protected plaintiff, &c., but that, on the contrary, at the time of date, sealing, &c., the taxes for the years 1867 and 1868 were a lien upon said real estate, and according to the laws of the State of Missouri, the taxes for both of said years were at the date, &c., of said deed to said Freeman, legally chargeable to defendant; that, on the 21st of October, 1868, said real estate was sold by the proper revenue officer for $141.22, being the amount of the State, county, &c., taxes for the year 1867, to one F. C. Koenig; that in order to prevent the title to said real estate from passing into said Koenig, plaintiff was legally compelled to, and did, on June 15, 1869, pay the said Koenig the sum of $290 to redeem said real estate from said tax sale; that, in order to protect the title to said real estate, and prevent the same from passing from the plaintiff, he did, on the 15th of June, 1869, pay to the proper revenue officer of said St. Louis county, $129.39, the same being the amount of the State, county, and school taxes for 1868; that he has paid, to protect his title and possession, the sum of $419.39, and concludes, that defendant has not kept his covenants, but has broken the same, to plaintiff's damage of $500. A trial by the court resulted in a judgment for the plaintiff, from which the defendant appeals.

Messrs. KASE & WILDERMAN, for the appellant.

Mr. JAMES M. DILL, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The question made on the present record is, whether this action lies by a remote grantee against a remote grantor, upon the covenant against incumbrances in the deed of the latter, it being in this form: "that the said lands are free from all incumbrances."

The position taken by the appellant is, that this covenant is in the present tense; that there was a breach of it as soon as the deed was executed by the defendant to Freeman, the covenantee; that a right of action for the breach of the covenant immediately

accrued in favor of Freeman ; that this right of action was a *chose in action,* and, like all other *choses in action,* could not be so assigned as to enable the assignee to bring an action in his own name ; that an assignee can not sue upon a breach of contract that happened before his time.

And the weight of American authority is undoubtedly in favor of the position, that the covenant against incumbrances, in the form of the one in question, being broken, if at all, at the instant of its creation, is thereby turned into a mere right of action, which is not assignable at law, which can be taken advantage of only by the covenantee or his personal representatives, and can neither pass to an heir, a devisee, nor a subsequent purchaser. And it is the same with the covenants of seizin and right to convey, they also being covenants *in præsenti,* and broken, if at all, when the deed is delivered. But English decisions hold a contrary rule, as well as those of some of the States.

The question, can an executrix sue for a breach of the covenant of seizin, without showing some special damage to have accrued to the testator, came before the court of King's Bench, in 1813, and was decided in the negative.

Bayley, Justice, said that the testator might have sued in his lifetime, but having forborne to sue, the covenant real, and the right of suit thereon, devolved, with the estate, upon the heir. *Kingdon* v. *Nottle,* 1 M. & Selw. 355.

The case of *King* v. *Jones,* 5 Taunt. 418, involved the same principle. The grantor covenanted with the grantee and his heirs, to do all lawful and reasonable acts for further assurance, upon request. The request was afterwards made by the grantee and refused by the grantor. The grantee died, not having sued for the breach, and not having been evicted. His heir, who was the party evicted, brought a suit for the breach of covenant, and the court sustained it. The covenantee, it was said, paid his purchase money, relying on the vendor's covenant; he required him to perform it, but gave time, and did not sue him instantaneously for his neglect, but waited for

the event. It was wise so to do, until the ultimate · damage was sustained, for otherwise he could not have recovered the ·whole value; the ultimate damage, then, not having been sustained in the time of the ancestor, the action remained to the heir (who represents the ancestor in respect of land, as the executor does in respect of personalty), in preference to the executor. And this judgment was affirmed on writ of error to the King's Bench. *Jones* v. *King,* 4 Maule & Selw. 188. The covenant being one for further assurance on request, the technical breach of it occurred upon the refusal to execute the further assurance on request, and the case presents the same question as that arising on the covenant of seizin.

The case first cited, *Kingdon* v. *Nottle,* came up again, when the same plaintiff sued *as devisee* of the covenantee, on the covenant of seizin.

It was argued that the covenant was broken as soon as made, and therefore no right of action passed to the devisee. The Chief Justice, in that case says: Here the covenant passes with the land to the devisee, and has been broken in the time· of the devisee, for so long as the defendant has not a good title, there is a continuing breach, and it is not like the covenant to do an act of solitary performance, which, not being done, the covenant is broken once for all, but is in the nature of a covenant to do a thing *toties quoties,* as the exigency of the case may require. Here, according to the letter, there was a breach in the testator's lifetime ; but, according to the spirit, the substantial breach is in the time of the devisee, for she has thereby lost the fruit of the covenant in not being able to dispose of the estate. *Kingdon* v. *Nottle,* 4 M. & Selw. 53.

With regard to such breaches of real covenants as occurred in the lifetime of the ancestor, but occasioned him no actual damage, or, after his death, the action should be brought in the name of his *heir*, or his *devisee.* 1 Chit. Pl. 24, and see Fitzherbert's N. B. 341-6, 3 Wentworth's Pleading, 440, Rawle Cov. for Title, 3 ed. 337, et seq. and 352, note 1.

The States of Indiana, Ohio, South Carolina and Missouri, appear to have adopted the same doctrine as the English courts. *Martin* v. *Baker,* 5 Blackf. 232 ; *Backus* v. *McCoy,* 3 Ohio, 211 ; *Foote* v. *Bennett,* 10 id. 312 ; 17 id. 52, *Devore* v. *Sunderland* ; *McCrady* v. *Brisbane,* 1 Nott & McCord, 104 ; *Dickson* v. *Desire,* 23 Mo. 152 ; *Chambers* v. *Smith,* id. 179.

In one of the earlier cases in Massachusetts, *Stinson* v. *Sumner,* 9 Mass. 143, the assignee of one who had received a covenant against incumbrances, was allowed to recover upon it without question as to his right. In another case, in the same court, in pronouncing upon such a covenant, Mr. Justice WILDE, who delivered the opinion, after acknowledging the rule of the common law, that *choses in action* are not assignable, and that it must be held binding, held the following language : " But we are not disposed to apply it (the rule) to cases not coming within the reason of the rule ; and we are inclined to the opinion that the present is a case of that description. There was a breach of the covenant, it is true, before the assignment, but for this breach Hitchings (the covenantee) could only have recovered nominal damages. The actual damages accrued after the assignment. They were sustained by the plaintiff, and not by Hitchings. * * * It seems to me that, if the present case required a decision upon this point, we might be well warranted in saying that the covenant against incumbrances, notwithstanding the breach, passed to the assignee, so as to entitle him to an action for any damages he might sustain after the assignment, because the breach continued, and the ground of damages has been materially enlarged since that time, so that the plaintiff's title does not depend upon the assignment of a mere *chose in action."* *Sprague* v. *Baker,* 17 Mass. 536. But afterwards, the technical rule denying the action to an assignee, was adhered to, and may be considered as the settled one in that State.

Chancellor KENT, in referring, in his Commentaries, to the principle as settled by the American cases, remarks that, it is to be regretted that the technical scruple that a *chose in action*

was not assignable, does necessarily prevent the assignee from availing himself of any or all of the covenants. He is the most interested, and the most fit person to claim the indemnity secured by them, for the compensation belongs to him, as the last purchaser and the first sufferer. 4 Comm. 557.

No English decisions in regard to the particular covenant against incumbrances are cited, as in England that covenant, unlike ours, is prospective in its operation, being usually connected with the covenant for quiet enjoyment, as, that the purchaser " *shall* enjoy, &c., *and that* free of all incumbrances," &c. But the rule which allows the action in the name of the assignee of the covenant of seizin, applies with much greater force in the case of the assignment of the covenant against incumbrances.

Where the covenant of seizin is broken, and there is an entire failure of title, the breach is final and complete, the covenant is broken once for all, actual damage and all the damages that can result from the breach have accrued; the measure of damages is the purchase money and interest, which are at once recoverable. In such case, the right of action is substantial, and its transfer may well be held to come within the rule prohibiting the assignment of *choses in action.*

But as the covenant against incumbrances is one of indemnity, the covenantee can recover only nominal damages for a breach thereof, unless he can show that he has sustained actual loss or injury thereby, or has had to pay money to remove the incumbrance. And where there is the barren right of recovery of only nominal damages, the right of action is one only in name, and is essentially no right of action. It is distinguishable from an ordinary *chose in action.*

The appellee does not claim to make his title to sue, by means of the purchase of a *chose in action.* The subject of his purchase was a lot of ground; the covenant is claimed to be annexed to the real estate; that it ran with the land and passed to him, not by direct operation of assignment, but as an

incident to the land. The right of suit for nominal damages, which Freeman had against the appellant, was no matter of consideration between the parties, at the time of the purchase, but it was regarded that, in case the purchaser of the land should sustain any actual damage by reason of a prior incumbrance, the covenant would then be to him a means of indemnity.

It would seem to be a case not coming within the reason of the rule prohibiting the assignment of *choses in action,* as the court were inclined to think in *Sprague* v. *Baker, supra.* What is the temptation to buy up mere nominal rights of action, or the danger therefrom, " lest there should be multiplying contentions and suits."

Mr. Rawle, in his work on Covenants for Title, observes that, it is somewhat remarkable that the cases of *Lucy* v. *Levington,* 2 Lev. 26, and *Lewis* v. *Ridge,* Cro. Eliz. 863, which have been referred to by American courts in support of the rule, that the covenants of seizin, and against incumbrances, are not assignable, do not at all appear to support the position for which their authority is relied upon. Rawle on Cov. 348. And they seem to decide no more than that *after total breach* the covenant becomes a *chose in action,* and incapable of transmission or descent. And a distinction between the former cases of *Lucy* v. *Levington,* and *Lewis* v. *Ridge,* and the later ones of *Kingdon* v. *Nottle* and *King* v. *Jones,* appears to be, that, in the former, it was held that covenants, after a substantial breach, would not run with the land ; in the latter, that, after a mere nominal breach, they might. As the doctrine of covenants running with land is an exception to the common law rule that *choses in action* are not assignable, why limit its sphere of usefulness, and confine it to those covenants which may be broken in the future ? May it not as well extend to such as have only been nominally broken at the time of assignment, and the substantial breach occurs afterwards, and the whole actual damages are sustained by the assignee?

It does not appear to be a sufficient answer, that the rule denying the action to the assignee creates only a formal difficulty, as the assignee may maintain an action in the name of the assignor for his use.

That is a cumbrous form of remedy, and the remedy is liable to be embarrassed. In the case in hand, such rule would require this suit, as we understand, to be brought in the name of the assignee in bankruptcy of Freeman, and to establish the right of action in such assignee, might be a serious inconvenience.

If it be held that the real cause of action on such a covenant, accrues immediately upon the making of the deed, it would seem that the statute of limitations would then commence to run, when the breach was only formal, and no actual damage suffered or recoverable, and when, perhaps, the incumbrance was not even discovered; and afterwards, when the incumbrance comes to be discovered, or when the actual loss on account of the incumbrance arises, and the substantial breach takes place, the statute of limitations may have run against the action.

In the state of the authorities, not feeling embarrassed by any former decisions of our own upon the point, we feel free to adopt the rule which we regard as the more reasonable and just. That is obviously the one which sustains this action in the present form, for the breach of the covenant against incumbrances, and admittedly so by courts which have felt constrained to lay down the contrary rule, only in supposed obedience to the strict technical common law rule.

We hardly feel called upon to be more rigid in adherence to a merely technical rule of the English common law, than the English courts themselves.

Although, then, according to the letter, this covenant against incumbrances was broken immediately on the delivery of the deed from the appellant to Freeman, yet, as the latter never removed the incumbrance, nor suffered any damage therefrom, we hold that the right of action for the breach of the covenant

passed to and vested in his grantee, the appellee, who sustained the whole actual damage, by paying the taxes and removing the incumbrance.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*