JAMES R. BROWN *et al.*, Plaintiffs-Appellants, *v.* MAUREEN M. LOBER, Ex'r of the Estate of Faith Barry Bost, Deceased, Defendant-Appellee.

Fifth District   No. 77-333

Opinion filed August 15, 1978.

JONES, J., dissenting.

Paul McWilliams, of McWilliams & McWilliams, of Litchfield, for appellants.

Maureen M. Lober, of Macy & Lober, of Litchfield, for appellee.

Mr. JUSTICE WINELAND delivered the opinion of the court:

This is an appeal by plaintiffs, James and Dolly Brown, from a judgment of the circuit court of Montgomery County finding that their action for breach of covenant under a warranty deed was barred by the statute of limitations.

Although a hearing was conducted below, no transcript of it appears in the record on appeal. An agreed statement of facts was filed on July 20, 1977. The following facts are derived from that statement.

In 1957, the Browns purchased 80 acres of land in Montgomery County from joint tenants William and Faith Bost. They received a statutory warranty deed (see Ill. Rev. Stat. 1957, ch. 30, par. 8) that contained no exceptions, dated December 21, 1957. The Browns thereafter went into possession and duly recorded their warranty deed.

Although the deed appeared on its face to convey the described land in fee simple, in fact, a two-thirds interest in the mineral rights (including coal) was reserved in 1947 by a prior grantor in the chain of title. The plaintiffs had their abstract of title examined in 1958 and again in 1968 for the purposes of a loan.

William Bost died sometime after making the conveyance and Faith Bost died on December 21, 1974. Defendant, Maureen Lober, was subsequently appointed executor of Faith's estate, which was still pending at the time of the making of the agreed statement of facts.

On May 8, 1974, plaintiffs granted a coal option to Consolidated Coal Company covering the rights to the coal beneath the surface of the 80-acre tract. The stated consideration was $6000. On May 4, 1976, the plaintiffs learned that they only owned one-third of the coal rights. The coal company then tendered $2000 for the Browns' interest which was accepted by them.

The plaintiffs commenced the present action on May 25, 1976, seeking $4000 damages.

The deed by which title to the instant tract of land was passed to the plaintiffs was in the form of a warranty deed as described in section 9 of "An Act concerning conveyances" (Ill. Rev. Stat. 1975, ch. 30, par. 8). At all times pertinent to this appeal, that section provided in part:

"* * * Every deed in substance in the above form, when otherwise duly executed, shall be deemed and held a conveyance in fee

simple, to the grantee, his heirs or assigns, with covenants on the part of the grantor, (1) that at the time of the making and delivery of such deed he was lawfully seized of an indefeasible estate in fee simple, in and to the premises therein described, and had good right and full power to convey the same; (2) that the same was then free from all incumbrances; and (3) that he warrants to the grantee, his heirs and assigns, the quiet and peaceable possession of such premises, and will defend the title thereto against all persons who may lawfully claim the same. And such covenants shall be obligatory upon any grantor, his heirs and personal representatives, as fully and with like effect as if written at length in such deed."

The covenants contained in subsection 1 above are generally referred to as the covenants of seizin and of good right to convey. Subsection 2 is referred to as the covenant against incumbrances and subsection 3 as the covenant of quiet enjoyment.

The Browns' complaint did not explicitly state which covenants they believed had been breached, giving rise to their cause of action. The court, however, found that only the warranty (covenant) of seizin (and necessarily the right to convey) had been broken and that the action was therefore barred by the statute of limitations. Since the defendant raised as an affirmative defense the 10-year limitation period of section 16 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 17), we conclude that the court found that it was the section of the Act which was applicable to a suit for breach of covenant under a warranty deed.

On appeal, the plaintiffs assert that their cause of action was based on alleged breaches of the covenant against incumbrances and the covenant of quiet enjoyment, rather than the covenant of seizin. Consequently, they argue that the action was not barred by the limitations period since a cause of action for breach of these covenants "accrued" when an eviction or the equivalent thereto has occurred. They argue that they were not evicted until 1976, when they learned that they owned only one-third of the underlying coal and other minerals. Although all actions for breach of covenant under a warranty deed must be commenced within 10 years "after the cause of action" accrued (Ill. Rev. Stat. 1975, ch. 83, par. 17), it is of some importance to ascertain which covenant has been breached because the decisions view causes of action under the various covenants as "accruing" at different times.

It is for this reason important to determine the validity of plaintiffs' assertion that their action is based on a breach of covenant of quiet enjoyment or the covenant against incumbrances.

It may be said to be well settled that the covenant of seizin of land and the right to convey such, that if broken at all, are broken when the deed is delivered. 14 Ill. L. & Prac. *Covenants* §8 (1968).

■■■ As opposed to this, it may be likewise said to be well settled that since a covenant of quiet enjoyment operates prospectively, it can only be broken when an eviction occurs or disturbance of the possession is caused by one having a paramount title. (14 Ill. L. & Prac. *Covenants* §8 (1968); *Scott v. Kirkendall* (1878), 88 Ill. 465; *Newman v. Sevier* (1907) 134 Ill. App. 544.) It was at one time held necessary under such a covenant to show actual eviction to prove a breach, but now it is not deemed necessary to do so and only something equivalent is held to be required. *Claycomb v. Munger* (1869), 51 Ill. 373.

The central issue in this case is whether the complaint states a cause of action for breach of the covenant of quiet enjoyment here involved. The answer to this issue in turn requires a discussion of the nature of such a covenant, also when a breach thereof is held to occur and what event triggers the statute of limitations against an action for a breach thereof. *Keogh v. Peck* (1925), 316 Ill. 318, 327-28:

> "The test as to whether a covenant runs with the land or is merely personal is whether the covenant concerns the thing granted and the occupation or enjoyment of it or is a collateral and personal covenant not immediately concerning the thing granted. If a covenant concerns the land and the enjoyment of it, its benefit or obligation passes with the ownership, but to have that effect the covenant must respect the thing granted or demised and the act to be done or permitted must concern the land or the estate conveyed. In order that a covenant may run with the land its performance or non-performance must affect the nature, quality or value of the property demised, independent of collateral circumstances, or must affect the mode of enjoyment. [Citations.]"

The question of both actual knowledge and constructive notice appears to have been pleaded in many of the cases touching incumbrances and covenants of quiet enjoyment.

■■ The fact that the parties knew at the time of conveyance that the grantor's title was defective or that an incumbrance existed on the land does not affect the right of recovery for a breach of covenant. *Weiss v. Binnian* (1899), 178 Ill. 241, 52 N.E. 969; *Beach v. Miller* (1869), 51 Ill. 206 (railroad in operation across land conveyed); *Sondag v. Keefe* (1929), 251 Ill. App. 378.

> "The existence of a private easement constitutes a constructive eviction sufficient to support a breach of covenant of warranty even though the grantee had knowledge of its existence at the time. *Whitley v. West*, 293 Ky. 751, 123 S.W.2d 1009; *Rea v. Minkler* (NY) 5 Lans. 196; *Eller v. Moore*, 48 App. Div. 403, 63 NYS 88."

It would appear from a reading of the cases cited by defendant that they are inapposite. The case of *Firebaugh v. Wittenberg* (1923), 309 Ill. 536,

discusses by way of dicta several cases involving covenants but is only authority for the proposition of holding that a purchaser is not required to accept a deed to real property where inchoate dower is outstanding.

*Catlin Coal Co. v. Lloyd*, 176 Ill. 275 (1898), *appeal on remand*, 180 Ill. 398 (1899), was a case of ejectment for possession of certain minerals which had been severed previously. In neither of the two cases was a breach of covenant involved before the supreme court. There was no breach of warranty involved. It would appear that these two opinions are consistent with our holding in this case.

We find no cases cited by the defendant in support of her theory that the plaintiffs were not subject to eviction from the two-thirds mineral rights by anyone because they never were in possession of them.

Likewise, in *Uphoff v. Trustees of Tufts College*, 351 Ill. 146 (1932), cited by defendant, there was a warranty conveyance to Uphoffs following warranty conveyances to third persons of a fractional interest of the coal and minerals. The deed to Uphoffs however contained this exception, "grantors should not be liable on their covenants herein on account of having made deed to Milton Sutliff and others dated June 10, 1870." Then, too, in this case there was separate taxation of the mineral interest beginning with the year of 1923 and continuing up to the filing of the complaint in 1928. There was also mining of the coal from time to time. It was, of course, held that a severance had been created of the two estates and that plaintiff's possession of the surface was not sufficiently adverse to overcome the severance once created, so as to revest title in plaintiffs of all the underlying minerals. Again no breach of covenant was involved.

The executor seems to make certain false assumptions in her brief. For instance, it is admitted that the plaintiffs had no knowledge of the incumbrance here until 1976. Almost in the same breath she states that they should have filed suit in 1957, when the warranty deed was executed, the theory being that was the time when the covenants were broken. At another point the defendant admits to the fundamental rule of law that a covenant of quiet enjoyment runs with the land and therefore suggests that since the plaintiffs owned the land, they should therefore sue the owners of the reserved minerals in ejectment for possession. This would seem to suggest a failure to distinguish between contractual and property rights. These positions on the part of the defendant fail to aid in the solution of a difficult problem. The latter proposal shows the confusion that exists in some of the cases, *viz.*, confusing *a suit for damages* for breach of covenant with a *possessory action* of the property in question.

Turning now to *Ibbetson v. Knodle*, 201 Ill. App. 373 (1916), cited by defendant: This case is not unlike the present case, and quite ironically, both cases arose in the same court. In *Ibbetson* plaintiff purchased by means of a warranty deed in statutory form certain land located in

Montgomery County. Some two months prior to the deed in question the defendant had conveyed all coal below a certain depth, with the right to mine and remove the same, all without liability for damage to the surface, to one Hammond. The latter deed was duly recorded in the recorder's office shortly thereafter. Plaintiff alleged that this prior conveyance created a covenant running with the land and constitutes a valuable estate in said land of the value of $2000, to the plaintiff's damage, etc.

The defendant demurred to the plaintiff's pleading and alleged especially that the title to the coal had been *severed* from the title to the surface before plaintiff recorded his warranty deed, which contained no exception. The demurrer was sustained by the trial court.

On appeal, the appellee contended that a severance of the two estates had been created of which appellant had knowledge and "that as a matter of law a subsequent conveyance of the surface of said lands by warranty deed, in statutory form, would not convey nor purport to convey the entire estate" and that the warranty deed to appellant should not be deemed to have conveyed in fee simple the coal and mining rights underlying the surface.

The court has this to say concerning notice:

"Appellee assumes that appellant had actual notice of the prior deed to Hammond. There is no averment that appellant had such notice. The averment is that the deed was recorded on February 6, 1913. The recording of a deed is only constructive notice and preserves the right of the grantee in such deed and does not affect the rights of the grantor and a subsequent grantee as to covenants of warranty between the parties. Mere knowledge on the part of the covenantee of facts that will constitute a breach of a covenant will not prevent a recovery for such breach. *Beach v. Miller*, 51 Ill. 206; *Weiss v. Binnian*, 178 Ill. 241; *Wadhams v. Swan*, 109 Ill. 46; note to *Brown v. Taylor*, (Tenn.) 4 L.R.A. (N.S.) 309; *Herzog v. Marx*, 202 N.Y. 1." 201 Ill. App. 373, 376.

The appellee also relied upon that section of the statute (Ill. Ann. Stat., ch. 94, pars. 7538-39 (Jones & Addington 1913)) which provides that mining rights may be conveyed by deed and when a mining right has been so conveyed, then the minerals and the surface shall be assessed separately. The court had this to say in regard to this contention:

"These provisions do not control the provisions of the Statute regarding the manner of making conveyances." 201 Ill. App. 373, 376.

Like here, the deed on its face to appellant did not limit the property conveyed and purported to grant the fee to all the land.

The court thus discusses this point:

"It would have conveyed and vested the title to the coal under the

land conveyed in appellant, except for the fact that the grantor had previously conveyed his title to the coal by a deed to Hammond which had been recorded. *Appellee by the deed to appellant covenanted that he had an indefeasible estate in the whole of the premises described. He had devested himself of the title to the coal which constituted a part of the premises conveyed. The conveyance of the coal constituted an incumbrance on the title. Strambaugh v. Smith,* 23 Ohio St. 584." (Emphasis added.) 201 Ill. App. 373, 377.

We note that this case involved breach of covenant as to seizin but much of what is said would, it is suggested, apply to covenants as to quiet and peaceable possession or breach of warranty.

The demurrer was held to be denied and the trial court reversed.

The court in this opinion is careful to note the difference between a suit for possession and one for damages for breach of covenant.

In the instant case it is agreed by the parties that the plaintiffs had no knowledge of the previous grant of the subsurface minerals until 1976. But if they did have it would have been of no moment because they could not have brought suit for breach of covenant of quiet enjoyment until they were actually or constructively evicted. It was at this time that the plaintiffs were advised by the coal company of the outstanding incumbrance in the underlying minerals. It was at this time that plaintiffs yielded, as they had a right to do, to the paramount title to the two-thirds interest in the coal. The coal purchaser refused to pay them for the coal rights warranted to them by the Bosts. It would seem to be at this time that the covenant of quiet and peaceable possession was disturbed for the first time since 1957 and that this suit was brought. The statute of limitations could not be operative until plaintiffs' rights were disturbed in the possession of their title by the sale of the underlying coal.

In this case it would seem that a key question involves the 10-year statute of limitations. When did it start to run?

The only Illinois case, so far as we have discovered, covering this point is *Chicago Mill & Lumber Co. v. Townsend* (1916), 203 Ill. App. 457. In this breach of covenant case the 10-year statute of limitations was pleaded but it was held not a bar. The court in its opinion stated:

"No breach of the covenant, therefore, occurred, and no cause of action accrued to Appellee until the time it was actually evicted by the holder of the paramount title, and it could not have maintained suit against the grantors until that time. [Citations.]" 203 Ill. App. 457, 465.

The rule stated in *Townsend* as to the statute of limitations is well annotated and is stated to be the general rule applicable throughout the various jurisdictions within the United States. (See Annot., 95 A.L.R. 2d 913, 916 (1964).) There the annotator states:

" * * * there is substantial agreement that the time the grantee

could first have maintained his action on the covenant is the time from which limitations begin to run. Some courts have qualified this rule by holding that * * * the statute of limitations does not commence running until he suffers some actual loss such as will entitle him to a substantial recovery."

We find the subject of constructive eviction of interest in this instant case. Relevant in this respect is the case of *Compton v. Trico Oil Co.* (Tex. Civ. App. 1938), 120 S.W.2d 534. There was a general warranty contained in an instrument conveying an oil and gas lease of a two-acre tract which constituted part of a 14-acre tract. There was outstanding at the time an oil payment of $7,000 due a third person from the first oil produced out of the 14-acre tract, which was not excepted in the instrument. (This is much the same situation as we have here only we are dealing with coal instead of oil.) This outstanding oil payment was held to be a constructive eviction of the assignee of the lease and constituted a breach of warranty entitling the assignee to a refund of the purchase price.

The basis for the rule of constructive eviction is said to be, as we have indicated, that the law does not require a useless act. This same reason was given in *Harding v. Larkin* (1866), 41 Ill. 413, where it was held that a party need not wait until actually expelled by legal process, but might yield to the superior title, purchase it, and then maintain an action on the covenant in the deed to him. In this case the Illinois court in its opinion said,

"The law never requires a useless act, and this would not only be so but would involve unnecessary additional expense." 41 Ill. 413, 422.

*Foshay v. Shafer* (1902), 116 Iowa 302, 89 N.W. 1106, is likewise an interesting case on this question. There the grantee in possession brought suit for breach of warranty on a covenant made some 25 years before the action was brought to recover the cost of purchasing an interest which was then outstanding. The court in this case pointed out that while a technical breach occurred at the time of the conveyance, the covenant of warranty was distinct and independent and was not breached until the outstanding interest was asserted against and satisfied by the grantee.

■■ So here, even though the deed was made some 19 years previous to the suit, there was nothing done by the owner of the two-thirds coal interest to interfere with the grantee's rights. So far as the agreed state of facts shows no one attempted to assert paramount title to the underlying coal until 1976. It was not until then that the plaintiffs had any right to bring suit against the grantor on his covenant of warranty. At this point for the first time, according to the agreed statement of facts, the plaintiffs were compelled to yield up two-thirds of the consideration which was the *quid pro quo* for the subject of the warranty—the underlying coal interest. The statute could not possibly begin to run until this time, and as the record shows they brought this suit immediately.

Since the plaintiffs here had no knowledge of any flaw in their title that

might even cause their eviction until 1976, it would perforce be true that there could be no eviction until that same date when their knowledge was first acquired of their eviction.

In this present case the defendant's decedents covenanted by their warranty deed that,

"* * * premises were free from all incumbrances; and they also warranted to the grantees, their heirs and assigns, the quiet and peaceable possession of such premises";

furthermore, that they

"* * * will defend the title thereto against all persons who may lawfully claim the same. And such covenants shall be obligatory upon any grantor, his heirs and *personal representatives*, as fully and with like effect as if written at length in such deed." (Emphasis added.)

The above constitutes that part of section 9 of "An Act concerning conveyances" (Ill. Rev. Stat. 1975, ch. 30, par. 8) governing the implied warranties and covenants of a general warranty deed, omitting only the covenant of seizin and the right to convey.

■■ We agree with the plaintiffs Brown that what is involved here are the covenants of warranty and for quiet enjoyment. These two covenants cited above, *i.e.*, warranty and quiet enjoyment, are treated as synonymous in Illinois. (14 Ill. L. & Prac. *Covenants* §4 (1968), citing *Bostwick v. Williams* (1864), 36 Ill. 65.) A covenant for warranty and a covenant for quiet enjoyment are substantially or almost the same. Such a covenant is considered the principal covenant in a deed. Both possess equally the capacity to run with the land. 20 Am. Jur. 2d *Covenants* §50 (1965).

■■ Such a covenant constitutes an obligation that the covenantor shall be barred, as well as his heirs, as well as personal representatives, from ever claiming the estate and that they shall undertake to defend it against a claim of paramount title.

In this case the parties seem to agree in their briefs and arguments that the issue here is whether the action against the defendant's decedent on the warranties encompassed in the warranty deed executed by the Bosts is barred by the statute of limitations?

In deciding this question it must be admitted that the estate conveyed by the Bosts to the Browns consisted of the land and an undivided one-third of the coal and mineral. That is all of the coal and mineral that remained; hence, it was all that could be conveyed. (*Smith v. Grubb* (1949), 402 Ill. 451, 84 N.E.2d 421.) This is not to say, however, that the grantor's inability to convey the remainder of the mineral estate excuses or in any way justifys a breach of the covenant made by the Bosts to the Browns. To hold otherwise would seem to beg the question. Also, the defendant seems to assume that the mere fact that there had been a previous conveyance in

1947 of a portion of the minerals constituted a severance. The agreed facts do not show such severance might be safely assumed. There was no showing of any separate assessment for tax purposes. Nor was there any showing of mining of the coal or leasing until the suit was filed (see *Ibbetson v. Knodle* (1916), 201 Ill. App. 373); even if we assume arguendo that there was in fact a severance existing in 1957, at the time the conveyance was made to the plaintiffs, the agreed state of facts show that they had no knowledge of that fact until just prior to the time of filing suit for damages for breach of covenant. Such a suit is much different from a suit for recovery of possession of an estate in land.

If it be asserted that since the Browns only received one-third of the mineral estate because of the previous reservation, and therefore never had title to, or any interest in, that portion of the mineral rights so sold, and for that reason could not have their estate therein of quiet enjoyment disturbed, suffice it to say that it is not quiet enjoyment of title to the *mineral estate* that is involved here. Rather it is the breach of covenant as to the fee of the 80 acres that is involved. As pointed out in *Wead v. Larkin* (1870), 54 Ill. 489, this is to sacrifice substance to shadow whereby the true meaning and spirit of a rule is sacrificed to the mere form of words in which it has been found convenient to express it.

In *Wead,* there was a suit for damages by a remote grantee v. the covenantor in a case where the defendants had no title at all. Defendants contended no action could be maintained because no estate passed to which the covenants could be annexed. This presents a proposition very much like the present contention as to the minerals. On appeal, in *Wead* this position was held untenable and the opinion points out the illogic in such a position when the covenantor says to his covenantee "My covenant with you is in fact broken—but because it is broken, I am not liable."

■■ It appears to us that this case is covered by the covenant of warranty or covenant of quiet enjoyment but it might not be amiss to discuss another covenant that the Illinois cases have on occasion discussed in this connection. A warranty deed is said in Illinois to include a covenant to convey land free from all incumbrances. (14 Ill. L. & Prac. *Covenants* §4 (1968).) It would appear here that the defect in title would constitute an incumbrance as it would seem to be a claim, lien, charge or liability attached to and binding real property. Black's Law Dictionary, under "incumbrance," sets forth certain restrictions which have been held to be such—mortgages, mechanic's liens, inchoate right of dower, encroachment of a building, easement or right of way, are listed, just to name a few.

■■ A covenant against incumbrances does not depend for its existence upon the extent or amount of the diminution of value, but extends to cases where, by reason of the burden, claim or right, the owner does not acquire

complete dominion over the land conveyed by his conveyance or deed. Thus, a lien or easement is properly viewed as a burden upon land, depreciative of its value, notwithstanding it does not directly conflict with the passage of title thereto. A burden may be only inchoate, yet if it is a right which may be enforced against the property and against the will or the consent of the owners, it is within the category of an incumbrance. (20 Am. Jur. 2d *Covenants* §81 (citing cases) (1965).) It necessarily follows that if such an incumbrance results in a breach of the covenant of quiet enjoyment, then irrespective of whether the covenant against incumbrances is barred by the statute of limitations, an action may be maintained on the covenant of quiet enjoyment.

Holding as we do, we believe that the complaint states a good cause of action against the personal representative and for this reason the judgment should be vacated and the cause remanded to the Circuit Court of Montgomery County for further proceedings consistent with this opinion.

Judgment vacated and cause remanded.

G. J. MORAN, J., concurs.

Mr. JUSTICE JONES, dissenting:
I respectfully dissent.

> "To sustain the present action [for breach of the covenant of warranty or quiet involvement] would be to confound all distinction between the covenant of warranty and that of seizin, or of right to convey. They are not equivalent covenants. An action will lie upon the latter, though there be no disturbance of possession. A defect of title will suffice. Not so with the covenant of warranty, or for quiet enjoyment, as had always been held by the prevailing authority."
> *Scott v. Kirkendall* (1878), 88 Ill. 465, 469.

It has long been settled that covenants of seizin and good right to convey are covenants *in praesenti* and if broken at all, are broken when the deed is delivered. (*Tone v. Wilson* (1876), 81 Ill. 529; *Jones v. Warner* (1876), 81 Ill. 343; *Roberson v. Tippie* (1906), 126 Ill. App. 579; *Firebaugh v. Wittenberg* (1923), 309 Ill. 536, 141 N.E. 379; 14 Ill. L. & Prac. *Covenants* §8 (1968).) Likewise well settled is that the covenant of quiet enjoyment operates prospectively and can only be broken when something equivalent to an eviction or disturbance of the possession of the grantee has been caused by one having a paramount title. *Scott v. Kirkendall; Newman v. Sevier* (1907), 134 Ill. App. 544; *Moore v. Vail* (1855), 17 Ill. 185; *Jones v. Warner;* 14 Ill. L. & Prac. *Covenants* §8 (1968).

The great weight of authority in Illinois supports the proposition that the covenant against incumbrances is also a present covenant which like seizin and right to convey is broken, if at all, when the deed is delivered. (*Jones v.*

*Warner; Firebaugh v. Wittenberg; Fechtner v. Lake County Savings & Loan Association* (1977), 66 Ill. 2d 128, 361 N.E.2d 575; 14 Ill. L. & Prac. *Covenants* §8 (1968).) However, it appears that there is an exception to this rule if the incumbrance is a money charge which is paid later by a remote grantee. (*Eichelberger v. Homerding* (1942), 317 Ill. App. 125, 45 N.E.2d 493; *Richard v. Bent* (1871), 59 Ill. 38, *Dalton v. Taliaferro* (1901), 101 Ill. App. 592.) This exception is ostensibly based on a theory of a continuing breach.

Generally, a landowner is entitled to the surface and all that is below it, and when a grantor makes a deed that contains no reservation and does not limit the estate conveyed, he conveys everything under the surface as well as on the surface. (*Miller v. Ridgley* (1954), 2 Ill. 2d 223, 117 N.E.2d 759; *Jones v. Johnson* (1974), 16 Ill. App. 3d 996, 307 N.E.2d 222.) In the instant case, the warranty deed was devoid of any exceptions or reservations. The expectation created was that title to both the surface and everything below it had been conveyed to the plaintiffs. Since, however, the grantors, the Bosts, did not have title to two-thirds of the mineral rights and no right to convey that portion, they improperly attempted to convey a greater title than they actually possessed. The covenants of seisin and of right to convey were therefore breached upon the delivery of the deed and a cause of action for the breach accrued in the plaintiffs at the time of the conveyance. (*Firebaugh v. Wittenberg.*) Since the instant action was commenced approximately nine years after the 10-year limitations period had expired, it was properly held barred unless the action would properly be maintained as an action on breach of a covenant which occurs upon eviction or ouster.

It is well established in Illinois that the mineral estate may be severed from the surface estate by a grant specifically of the minerals, reserving the surface, or by a grant of the surface while reserving the minerals, and, when this has been accomplished by a deed, two estates exist in the land which are subject to independent ownership and to separate taxation and which may be devised or conveyed like any other real estate. (*Shell Oil Co. v. Moore* (1943), 382 Ill. 556, 48 N.E.2d 400; *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 147 N.E.2d 341; *Failoni v. Chicago & North Western Ry. Co.* (1964), 30 Ill. 2d 258, 195 N.E.2d 619; see also *Jones v. Johnson.*) In addition, when the mineral estate has been severed, a conveyance of the surface does not carry with it title to the subsurface minerals. *Catlin Coal Co. v. Lloyd* (1898), 176 Ill. 275, 52 N.E. 144; *Shell Oil Co. v. Moore.*

When the mineral interest is severed from the surface estate it may be regarded as vacant and unoccupied land. (*Failoni v. Chicago & North Western Ry. Co.; Catlin Coal Co. v. Lloyd.*) Possession of the surface does not carry possession of the minerals, nor does nonuse or abandonment of the mineral interest terminate said estate. (*Failoni v. Chicago & North*

*Western Ry. Co.; Jilek v. Chicago, Wilmington & Franklin Coal Co.* (1943), 382 Ill. 241, 47 N.E.2d 96.) To possess the mineral estate, one must undertake the actual removal thereof from the ground or do such other act as will apprise the community that such interest is in the exclusive use and enjoyment of the claiming party. *Failoni v. Chicago & North Western Ry. Co.; Pickens v. Adams* (1955), 7 Ill. 2d 283, 131 N.E.2d 38; *Towle v. Quante* (1910), 246 Ill. 568, 92 N.E. 967.

The crux of the majority's decision rests upon the assertion that plaintiffs' title was "disturbed" for the first time since the 1957 deed from the Bosts when the purchasing coal company declined payment to the plaintiffs for the previously reserved two-thirds mineral interest. I assume that by "disturbed" the majority means that the plaintiffs were constructively evicted from the outstanding two-thirds mineral interest by the action of the coal company, and the covenant for quiet enjoyment implicit in the Bost deed was thereby breached.

As will be seen from cited cases, to constitute an eviction, or constructive eviction, there must be an actual or threatened disturbance, plus an assertion of a paramount title. Neither of these events transpired here. The purchasing coal company did absolutely nothing to oust plaintiffs from the outstanding two-thirds mineral interest. Neither did they assert a paramount title to the coal interest. They took no action against plaintiffs whatsoever or against the title that plaintiffs held. Their only role was to refrain from paying plaintiffs for something which they had determined for themselves that plaintiffs did not own.

The case of *Scott v. Kirkendall* is similar on its facts to the one under consideration in that the defendants conveyed to plaintiffs land which they did not own. The land was vacant and unoccupied and neither of the parties had ever had actual possession of the land. Plaintiffs brought an action for breach of the covenant of warranty, or quiet enjoyment. The supreme court considered the issue as follows:

> "The only question presented by the record, which we need to consider, is, whether there can be a recovery in an action of covenant for breach of the covenant of warranty in a case where the land concerned is and ever has been vacant and unoccupied, without showing more than an outstanding paramount title. The great current of authority is in favor of the negative of the proposition.
>
> It is common doctrine, and well established generally, that the mere existence of a paramount legal title which has never been asserted, can not amount to a breach of this covenant. The covenantee, or his assignee, must be disturbed in the possession, actual or constructive—he must be evicted, or there be something equivalent thereto; and in the action the plaintiff must allege and

prove an ouster or eviction by a paramount title. It is not necessary, however, that he should be evicted by legal process; it is enough that he has yielded the possession to the rightful owner, or, the premises being vacant, that the rightful owner has taken possession. [Citations.] This covenant of warranty is regarded as, in effect, a covenant for quiet enjoyment, and can only be broken by something equivalent to an eviction or disturbance of possession of the grantee. [Citation.] What will be held as equivalent to eviction, authorities may differ concerning, but there is a general concurrence that something more than the mere existence of a paramount title is necessary to constitute a breach of the covenant of warranty." (88 Ill. 465, 466-67.)

The court continues by referring to *Moore v. Vail* as follows:

" 'Until that time, (the taking possession by the owner of the paramount title,) he might peaceably have entered upon and enjoyed the premises, without resistance or molestation, which was all his grantors convenanted he should do. They did not guarantee to him a perfect title, but the possession and enjoyment of the premises.' " (88 Ill. 465, 468.)

The court in *Scott* concluded:

"We do not see but what this fully decides the present case against the appellant. It holds that the mere existence of a paramount title does not constitute a breach of the covenant. That is all there is here. There has been no assertion of the adverse title. The land has always been vacant. Appellant could at any time have taken peaceable possession of it. He has in no way been prevented or hindered from the enjoyment of the possession by any one having a better right. It was but the possession and enjoyment of the premises which was assured to him, and there has been no disturbance or interference in that respect. True, there is a superior title in another, but appellant has never felt 'its pressure upon him.' " (88 Ill. 465, 468-69.)

Also see *Moore v. Vail* and *Chicago Mill & Lumber Co. v. Townsend* (1916), 203 Ill. App. 457.

Another statement of the rule of what is necessary for a constructive eviction so as to constitute a breach of the covenant for quiet enjoyment is contained in *Barry v. Guild* (1888), 126 Ill. 439, 446, 18 N.E. 759:

"The breach can only be shown by proof of an eviction. It is true, an actual eviction is no. longer required, and there has been considerable discussion, and perhaps some conflict, in the decisions of courts, as to what facts must be proved in order to show an eviction, or its equivalent; but the rule deducible from all the authorities is, *that there must be a union of acts of disturbance and lawful title, to constitute a breach of the covenant for quiet*

*enjoyment,* or warranty, which is in fact equivalent." (Emphasis added.)

The facts of *Barry* were that a third party held what appeared to be a paramount title but since they had made no effort to take possession under their title to the exclusion of Barry, then a breach of the covenant for quiet enjoyment had not occurred.

In the case at hand neither party was in possession of the severed mineral interest. Possession could only be exercised by mining or removal and no one is doing this or threatening to do it. No one is asserting a paramount right or title against plaintiffs. No ouster or eviction is threatened. The plaintiffs have been deprived of nothing. Without question here, the covenant of seisin and right to convey has been breached and perhaps that against incumbrances, but there has as yet been no breach of the covenant of quiet enjoyment. The majority should put this question: Suppose no person or persons ever attempt to mine or remove coal or other minerals from the land in question? In that event, and it is a decided possibility, the plaintiffs will never have been evicted from the two-thirds interest in the coal and they will still have defendant's $4000 received in the judgment granted.

I do not understand how the majority can rely upon the cases of *Compton v. Trico Oil Co.* (Texas) and *Foshay v. Shafer* (Iowa) without some indication that they were decided under statutes similar to that of Illinois. Anyway, Illinois authorities are decisive of the issues and there is no occasion to resort to cases from other jurisdictions.

I would affirm.